[Sac. No. 5094. In Bank.—September 1, 1938.]

L. A. BACCIOCCO et al., Appellants, v. W. H. CURTIS et al., Respondents.

110

Preston & Preston, J. Elmer Barricklo and L. C. Smith for Appellants.

Carter, Barrett, Finley & Carlton for Respondents.

THE COURT.—On this rehearing, we adopt that part of our former decision setting forth the facts and issues, as follows:

"This is an action to set aside as fraudulent a conveyance from defendant husband to defendant wife and to subject the property to plaintiffs' judgments. The trial court denied any relief to the plaintiffs and awarded to the defendant W. H. Curtis judgment in the sum of $6,400 on the fourth cause of action pleaded in his cross-complaint. The plaintiffs have appealed from the entire judgment.

"In February, 1923, Reuben Kern leased to A. G. Steelman property in San Francisco to be used for a garage and Steelman executed a chattel mortgage to secure the covenants of the lease covering all the equipment and fixtures placed in the premises by the lessee or his assigns. Thereafter the plaintiffs purchased the property from Kern, and on No-

vember 30, 1926, leased the premises to defendant W. H. Curtis for a period of ten years, at a total rent of $114,000, payable $950 per month. To secure performance of the lease Curtis acknowledged the existence of the chattel mortgage on the fixtures of the garage and also the payment to plaintiffs under paragraph XVII of the lease of the sum of $5,000, denominated a 'bonus for the lessor's execution of this lease'. The lease provided that so long as there was no default by the lessee, the lessors would allow him semi-annually a sum equal to interest at the rate of 6 per cent per annum on the said $5,000, and that in the event of full performance the $5,000 would be credited on the rent for the last five odd months of the term.

"On June 22, 1930, upon written consent of plaintiffs, the lease was assigned by Curtis to Steelman and Pike, Curtis expressly agreeing to remain liable on the covenants thereof. On February 25, 1931, with plaintiffs' written consent, the lease was assigned by Steelman to Pike, the assignor expressly agreeing to remain liable on all covenants. For the months of April, May and June, 1931, neither Curtis, Steelman nor Pike made any rental payment.

"On November 12, 1930, Curtis secured, as lessee, a 15-year lease on two lots in Redding, Shasta County, which property he improved and operated as the 'A-1 Motor Court'. On June 16, 1931, Curtis conveyed to Clara E. Curtis, his wife and codefendant herein, all his interest in the A-1 Motor Court, including the leasehold and improvements. It is this conveyance which plaintiffs, by this action, would set aside as in fraud of their rights as creditors.

"One day after the conveyance was made, on June 17, 1931, plaintiffs served on Curtis, Pike and Steelman, with respect to the San Francisco garage, the three-day statutory notice to quit, and on June 22, 1931, plaintiffs gave written notice of termination of the lease. The next day, June 23, 1931, plaintiffs filed in the San Francisco superior court an action in unlawful detainer against W. H. Curtis, Pike and Steelman, seeking restitution of the garage premises, rent for April, May and June, and attorney's fees. Separate answers were filed by W. H. Curtis and the other two defendants, alleging special defenses, such as the existence of the chattel mortgage given to secure performance of the lease,

an agreement of sale dated July 25, 1930, whereby W. H. Curtis transferred to his codefendants all his interests in the personal property located in the garage, and an agreement of plaintiffs to release W. H. Curtis of all liability under the lease in consideration for the transfer to plaintiffs of the unpaid balance due on this contract of July, 1930. Trial of the action resulted in a judgment for plaintiffs, which became final on January 5, 1932.

"On June 29, 1932, plaintiffs commenced a second action against the same defendants, Curtis, Pike, and Steelman, for foreclosure of the chattel mortgage. Curtis defaulted, and on September 1, 1932, a decree of foreclosure was entered for plaintiffs as against all of the defendants, in the sum of $3,095.48 plus $250 attorney fees, interest and costs. A foreclosure sale was had at which plaintiffs bought in the property for about $25, and on September 21, 1932, a deficiency judgment was filed in their favor and against defendants for $3,564.80, with interest. On March 29, 1933, Steelman was adjudicated a bankrupt, with estate of no value, and on February 9, 1934, a writ of execution against Pike was returned unsatisfied. On July 6, 1933, writ of execution against Curtis directed to the sheriff of Shasta County was likewise returned wholly unsatisfied.

"On June 18, 1934, plaintiffs commenced this present action against Curtis and his wife to set aside his conveyance to her on June 16, 1931, of his interest in the A-1 Motor Court at Redding. The complaint, based on sections 3439, 3440 and 3442 of the Civil Code, alleged that the conveyance was unaccompanied by any real change of possession, made without filing of the statutory notice of transfer required by section 3440 of the Civil Code, and with intent to defraud creditors at a time when Curtis was financially impotent and knew that he had already been indebted to plaintiffs for three months and that the unlawful detainer suit was about to be instituted by plaintiffs, and that no relief could be secured from Pike and Steelman. The prayer of the complaint was that the transfer be declared fraudulent and void; that defendants be restrained by injunction from interfering with the property or its proceeds (in January, 1934, the Curtises had sold a portion of their interest in the motor

camp to the Shell Oil Co.) except under direction of the court, and that plaintiffs' judgments be satisfied out of it, and for general relief.

"To plaintiffs' complaint defendants Curtis and wife filed an answer setting up a number of affirmative defenses, an amended answer, amendments thereto, and W. H. Curtis filed a cross-complaint alleging four causes of action, the fourth cause being later amended to conform to proof. On the subject of fraud, defendants averred that the wife paid the husband, as consideration for the transfer, $5,480 from her separate assets which sum he used to pay creditors; also that the conveyance was accompanied by an immediate change of possession. Another separate defense was that for a valuable consideration plaintiffs had agreed with and promised defendant Curtis that they would not attempt to enforce against him the judgment obtained by them in the prior unlawful detainer action. The gravamen of the charge in the four causes of cross-complaint was that at the time plaintiffs secured judgment in the prior action in unlawful detainer, they converted personal property of Curtis worth $5,000 and also held unforeclosed the chattel mortgage given to secure performance of the lease covering $5,000 worth of other property in the garage, which property they took possession of and converted to their own use, and yet when they purported by the second action to foreclose the chattel mortgage and to sell the property at a purported foreclosure sale to themselves for $25.50, they allowed Curtis no credit on account of the indebtedness under the lease, or in satisfaction of the judgment obtained in the first action, notwithstanding the value of the property was sufficient to satisfy in full both said indebtedness and said judgment. Furthermore, the cross-complainant alleged (fourth cause of action as amended to conform to proof) that when on June 30, 1931, the lease was terminated by mutual consent with $2,825 due for unpaid rent thereunder, and Curtis permitted plaintiffs to have possession of said $5,000 worth of personal property, thus discharging the $2,825 obligation. Curtis thereupon became entitled to receive back from plaintiffs the $5,000 which he originally deposited with them upon execution of the lease."

A number of questions are raised and argued in the briefs, but in our opinion two of them are determinative of the case and these alone need be discussed here.

The first point is that the alleged fraudulent transfer was not, in fact, in fraud of creditors. The trial court found that it was a valid conveyance for a good consideration without intent to defraud, and followed by a sufficient and continued change of possession. This finding is amply supported by the evidence. The record shows that when defendant W. H. Curtis was unable to discharge obligations of the auto court, his wife, defendant Clara E. Curtis, borrowed $3,500 from her relatives, and added $2,000 of her own separate funds. The assignment to her of the auto court lease was in consideration of her agreement to assume and pay $5,480 of obligations then listed against the premises. After the assignment Mrs. Curtis ran the business. She secured a new license, in her own name, made all the purchases, paid all the bills, and had sole authority to sign the checks. Upon such a record the conveyance cannot be successfully attacked by charging a fraudulent intent on the part of W. H. Curtis. The alleged fraud was not proved, and the showing of a valuable consideration conclusively answers the charge. (See *Bandle* v. *Commercial Bank,* 178 Cal. 546 [174 Pac. 44]; *Atkinson* v. *Western D. Syndicate,* 170 Cal. 511 [150 Pac. 363]; *Security Trust Co.* v. *Silverman,* 210 Cal. 518 [292 Pac. 636].)

The second point relates to the fourth count of defendants' cross-complaint, seeking the recovery of a $5,000 deposit paid by the former lessee at the time of execution of the lease. The lease in this connection states that ''as a bonus for the lessor's execution of this lease, the lessee has paid him, unconditionally upon execution thereof the sum of five thousand dollars ($5,000.00)'', to be credited on the last five months' rent. It is settled in California that where there is an absolute payment of rent in advance for some portion of the term, or where there is a payment of a certain sum as a ''bonus'' or ''consideration'' for the execution of the lease, the lessor may retain it upon termination. (See *A-1 Garage* v. *Lange Inv. Co.,* 6 Cal. App. (2d) 593 [44 Pac. (2d) 681].) But if it is a deposit as security for the performance of the terms of the lease, it is treated as a provision

for a penalty, and the lessor cannot keep the sum upon the lessee's breach. (*Redmon* v. *Graham,* 211 Cal. 491 [295 Pac. 1031]; *Sullivan, Inc.,* v. *Johnson,* 116 Cal. App. 591 [3 Pac. (2d) 72].) ■ These rules are established, and the only problem is one of application. Plaintiffs contend that the lease is unambiguous in its declaration, and that therefore the payment must be deemed a bonus. The trial court found, however, that it was not a bonus but a deposit as security, and while the matter is not free from doubt, we think there was evidence to support this interpretation. The lease itself contains two additional provisions which are not easily reconcilable with the idea of an absolute transfer to the lessor of funds in which the lessee retains no further rights. One is the provision that in the event of termination of the lease by destruction of the building, the lessor ''will pay the lessee so much of the said sum of Five Thousand Dollars ($5,000) as shall not theretofore have been so credited upon the rent''. The second provision is that as long as the lessee is not in default in payment of rent or performance of other covenants of the lease, ''the lessor shall allow him, semi-annually, a sum equal to interest at the rate of 6 per cent per annum upon said sum of five thousand dollars ($5,000.00) or on that part thereof not actually credited as aforesaid''. These provisions suggest that the lessee retains substantial rights in the fund until the end of the term; and the provision for regular interest for the whole term if the lessee properly performs seems to indicate that the fund was chiefly intended as security for performance rather than as a bonus for execution of the lease or an absolute advance payment of rent. At any rate, these inconsistent statements in the lease itself are an answer to the contention that the unambiguous characterization of the sum as a ''bonus'' removes the matter from the court's power of construction. In our opinion the court was justified in considering the circumstances surrounding the making of the lease and the giving of the deposit in order to determine what meaning and effect should be given to the language. ■ And these circumstances fully support its conclusion. When the $5,000 was paid, plaintiff gave Mr. Curtis a receipt, reading: ''Received of W. H. Curtis Five Thousand and no-100 Dollars deposit as security for payment of rent under lease dated 12–1–26.

AETNA GARAGE. L. A. BACCIOCCO.'' This declaration of the parties on the controverted issue must be held to turn the scale in favor of the finding of the trial court, which properly looked at the substance rather than the form of the transaction. (See *Sullivan, Inc., v. Johnson, supra.*)

Nor do we think that the doctrine of *res judicata* is an obstacle to the judgment on the cross-complaint, for an action to recover a deposit paid by the lessee, after a prior unlawful detainer proceeding by the lessor, has been recognized as proper in this state. (See *Green v. Frahm,* 176 Cal. 259 [168 Pac. 114].)

In view of the above we do not find it necessary at this time to consider the evidence presented by defendants to show that plaintiffs orally agreed, for consideration, not to seek enforcement of their money judgment for rent, although it should be noted that the lower court found this evidence convincing and held that plaintiffs were estopped from enforcing the same.

No other points require discussion.

The judgment is affirmed.

Rehearing denied.