## CAPLES v. DEARBORN STOVE CO.
### No. 14222.

Court of Civil Appeals of Texas. Dallas.
May 12, 1950.

Rehearing Denied June 30, 1950.

W. F. Bane, Lee S. Bane, Marion S. Church and R. T. Meador, all of Dallas, for appellant.

W. Autry Norton and Joseph W. Riley, both of Dallas, for appellee.

BOND, Chief Justice.

On August 1, 1946 appellant W. J. Caples was the owner of a dwelling, with guest house in the rear, in the City of Dallas, and by written contract of that date leased the dwelling with house furnishings to one James Teague for a term of one year beginning August 1, 1946 and ending July 31, 1947 for a recited consideration of $1,200 cash paid. The contract, material here, provides that the lessee shall not assign the agreement or sublet the premises, or any part thereof, without the consent of the lessor in writing. At the beginning of the term, James Teague moved into the dwelling and occupied it three months,—until November 1, 1946, when he voluntarily and without notice to the lessor vacated the premises. On August 6, 1946 the lessee, while occupying the premises, by written endorsement on his duplicate copy of aforesaid lease contract, assigned the lease to appellee Dearborn Stove Company; and, on August 10, 1946, a Mr. Norris, Controller for the Dearborn Company, advised the lessor by letter that the Company had taken over the lease and desired to dispose of it "to parties acceptable" to lessor, or to "reassign" the lease to lessor on refund of the unearned portion of the advance rentals paid by Teague. On August 14, 1946, the lessor, by letter, acknowledged receipt of Dearborn's letter and in reply declined to accept the assignment or to permit any other tenant or agent of the Company to occupy the premises without his written consent as provided in the lease agreement; and directed the Company not to enter upon the premises. Whereupon, on November 1, the appellant (lessor) reoccupied and used the property for the remainder of the term.

Prior to the date of the lease contract the Office of Price Administration at Dallas, acting under the Federal Emergency Price Control Act of 1942, Title 50 U.S.C.A. Appendix, § 925, subsection (e), fixed the maximum legal rate of rental for the dwelling with the guest house at $100 per month, which rate was in effect during the time Teague made the lease and occupied the premises. The reasonable rental of the guest house for the period of Mr. Teague's occupancy was not less than $25 per month. However, instead of Lessee Teague paying $1,200 to appellant as stated in the lease agreement, the lessor exacted of him $1,-620, which he paid.

On the above premise, appellee instituted this suit against appellant for $1,200, the unearned rental of the premises from November 1, 1946 to July 31, 1947, perforce of the assignment, for $524.97 treble damages for overcharge in rents paid by Teague for the months of August, September, and October of 1946, and for $750 attorney's fee. The cause was tried to the court without a jury, and judgment entered in favor of appellee for the $1,200 unearned rentals, for the $524.97 overcharge, and for $500 attorney's fee.

The foremost issue presented in this appeal, determinative of the suit, is the right of appellee, perforce of its pleadings and independent of evidence adduced on trial, to maintain this suit. The plaintiff (appellee) is a foreign corporation with its principal office and place of business in the City of Dallas, Dallas County, Texas. The suit is on the lease and assignment involving property rights in Texas, and for F.H.A. rental overcharge and attorney's fees, perforce of law, as directed by order of Price Administration at Dallas fixing the rental rates at Dallas and in the Dallas defense-area. Appellee affirmatively alleged in its petition that it is a foreign corporation, "a corporation organized * * * and with a valid and subsisting permit to do business in the State of Texas, and with its principal place of business in the City of Dallas, Dallas County, Texas, * * *. That on and prior to August 1, 1946, defendant W. J. Caples was the owner and in possession of a dwelling in the City of Dallas, and on such date, by written instruments duly executed and delivered, leased such premises * * * to James Teague · * * *. That the leased premises, at all times material herein, were situated in the Dallas Defense Rental Area * * *. That on or about August 6, 1946 the said James Teague, for a valuable consideration, assigned to plaintiff (appellee) all his right, title, and interest in and to the claim and cause of action described in the preceding paragraph. * * * In like manner, for a valuable consideration, assigned to plaintiff all of his right, title and interest in and to the unexpired term of the lease." Defendant interposed merely a general denial and plea of limitation as to the overcharge and attorney's fee.

The evidence adduced on trial discloses that the lease contract entered into between James Teague and appellant Caples was for a dwelling located in Dallas, Texas, owned and occupied by appellant, and that appellee's principal office and place of business, at time of the assignment, was in Dallas. Appellee's check for $1,655 was executed at Dallas, Texas, payable to James Teague as the consideration for the alleged assignment, drawn on the Mercantile National Bank of Dallas, and paid by said bank in regular course of business. The letter of August 10, 1946 to appellant, evidencing the assignment, was written by Mr. Norris, Controller for Dearborn Stove Company at Dallas, Texas, and addressed to appellant at New Orleans, Louisiana. A further formal assignment of the lease, from Mr. Teague to appellee, was executed on November 25, 1949 and is shown to have been acknowledged before a notary public of Howard County, Texas, and bears the caption "The State of Texas: County of Dallas." Mr. Norris, witness for appellee, testified that he lived in Dallas, Texas, was Vice President of plaintiff corporation, and that on August 1, 1946, James Teague was the Company's business manager in Dallas and lived in Dallas. Mr. Leibstrand, also a witness for appellee, testified that he lived in Dallas, was President of appellee Company, that in 1946 he was Vice President of the Company, that James Teague was its general manager; and that he made an agreement with Teague relative to reimbursing him for rentals that he (Teague) had paid appellant, in that he agreed that the Company would (and did) pay him what he had paid out for the lease; whereupon Teague assigned the lease to the Company. There is not the slightest evidence in pleadings or proof that the transaction was interstate. Appellee does not here contend that the transaction was, in fact, interstate. We think the evidence is conclusive that it was intrastate. Appellee offered no evidence to prove that it had a permit to do business in Texas, or to establish a general or special office in this state as to comport with its pleadings; nor did appellant offer any evi-

672

dence on the issue,—relying on that as above stated.

A foreign corporation, desiring to transact business, or to establish a general or special office in Texas, is compelled by statute, Art. 1529, Vernon's Ann.Civ. St., to file with the Secretary of State a certified copy of its Articles of Incorporation, and receive a permit. The penalty for violation of this statute is the denial of the right of such corporation to maintain a suit in any court of this state upon any claim or demand. Article 1536, id. The statutory compulsion and the penalty impose no duty on such a corporation to prove that it has a permit, unless the pleadings of such corporation affirmatively disclose an intrastate transaction, or the opposing party raises the issue by affirmative defensive pleadings. In such case, a general denial raises no presumption of lack of authority to sue. Barton v. Kansas City Life Ins. Co., Tex.Civ. App., 98 S.W.2d 836; Jarrell v. Mortgage Bond Co., Tex.Civ.App., 129 S.W.2d 379; Aeronautical Corp. of America v. Gossett, Tex.Civ.App., 117 S.W.2d 893; Oklahoma Tool & Supply Co. v. Daniels et al., Tex. Com.App., 290 S.W. 727. And where such foreign corporation's pleadings show that it maintains its principal office and place of business and has a valid and subsisting permit to do business in the State of Texas, irrespective of the proof that the transaction at hand is intrastate, as against the defense of general denial, such allegations will be treated as surplusage; in effect, that the defense waived proof of the compulsion and penalty to sue, id.

However, there are abundant authorities holding that the statutory compulsion and penalty have been imposed upon a foreign corporation where the pleadings of such corporation disclose that it has established an office in Texas and is doing intrastate business, and that a general denial is sufficient to put the corporation to the task of proving that it has a valid and subsisting permit; especially so, where the proof shows conclusively that the transaction in question was intrastate, or for lack of proof that the transaction was interstate. When a foreign corporation alleges in its petition

that it has established an office for the purpose of doing business in this state, such allegation alone constitutes affirmative disclosure of necessity for compliance with Art. 1529, supra. Taber v. Interstate Building & Loan Ass'n, 91 Tex. 92, 40 S.W. 954; Smith v. Jasper County Lumber Co., 124 Tex. 156, 76 S.W.2d 505; Jenkins v. Pure Oil Co., Tex.Civ.App., 53 S.W.2d 497. Contrarily, we have in Continental Supply Co. v. Hoffman, 135 Tex. 552, 144 S.W.2d 253, 254, opinion by the Commission of Appeals, adopted by the Supreme Court, where a foreign corporation, in pleadings, did not affirmatively show that the transaction involved was either intrastate or interstate, but did allege, as here, that it was a foreign corporation "with its principal office and place of business in Dallas, Dallas County, Texas, and doing business in Texas, under and by virtue of a lawful permit so to do"; and where, in defense, a general denial alone was filed; the court said: "* * * in the present case, treating as true the allegation in the Supply Company's petition, to the effect that the Company had its principal office here, and was doing business in this State, still the necessity for a compliance with the statute does not appear. The fact that the sale to Lockhart constituted an intrastate transaction is not affirmatively alleged in the plaintiff's petition; the defendant failed to tender issue in respect to the character of such sale and therefore he must be regarded as having waived the issue. Oklahoma Tool & Supply Co. v. Daniels, Tex.Com.App., 290 S.W. 727." The opinion also cites with approval Texas & P. R. Co. v. Davis, 93 Tex. 378, 54 S.W. 381, 55 S.W. 562; 11 Tex.Jur., p. 163. This being the last expression of our Supreme Court, we are impelled to follow the decision. Therefore, appellant's point of error challenging the right of appellee to maintain its suit in absence of proof that it has a permit to "transact or solicit business in Texas, or to establish a general or special office in this State," as alleged in its petition, is overruled.

This leads to consideration of the merits in controversy. Appellee's claim to recover treble damages and attorney's fee,

perforce of the Emergency Price Control Act of 1942, Title 50 U.S.C.A.Appendix, § 925, subsection (e), hinges on the alleged assignment of the lease and incidental implied rights. The pertinent parts of the Act read: "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the *person* who buys such commodity for use or consumption other than in due course of trade or business may, *within one year* from the date of the occurrence of the violation, * * * bring an action against the seller on account of the overcharge. In any action under this subsection, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is [the] greater: (1) such amount not more than three times the amount of the overcharge, * * *. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word 'overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price." (Italics supplied.)

This statute brings to attention that the "person" who exacts overcharge "payment or receipt of rentals" for housing accommodations in violation of the regulation or price schedule prescribed by the Defense-Area Housing Administration, shall be liable to the "person" who pays such overcharge; and, reciprocally, the "person" who pays the overcharge "may," within one year from the date of the violation of the Act, bring an action on account of such overcharge. The statute authorizing suit for treble the overcharge, and attorney's fees, is expressly limited to the person paying the overcharge; and unless that person brings the suit within one year his cause is barred. The statute does not expressly authorize an assignment of such cause of action, or permit any other individual to bring the suit. The general rule is that unless a statutory claim, either penal, or personal to certain individuals, survives to heirs or representatives of the decedent, it is not assignable. This is true in actions under this statute. Bowles v. Farmers Nat.

Bank, 6 Cir., 147 F.2d 425. Ordinarily, survivability is necessary to assignability. 6 C.J.S., Assignments, § 30; 1 Am.Jur., p. 69, sec. 80. By the assignment of August 6, 1946, reading "I hereby assign all of my rights in this lease to Dearborn Stove Co. (Signed) James Teague," the Lessee Teague only assigned to appellee "all of my rights in this lease"; and in the formal assignment of November 25, 1949 (three years later), he extended the assignment to "any and all causes of action and claims which he *now* * * * possess against the said W. J. Caples and arising out of the transactions." (Italics supplied.) A "lease" is a grant or devise of realty, usually for a term of years, and must be executed in the essential prerequisites of a deed; hence the purported assignment, or memorandum, of August 6, 1946, written on the back of the lease, by express terms only confers, if anything, possessory rights in and to the realty; which, under the covenants of the lease contract and under Art. 5237, Vernon's Ann.Civ.St., the lessee could not do. The assignment at most is not ambiguous, and there is no pleadings of ambiguity, or of fraud, accident, or mistake in the making of the assignment; hence the rights of the parties thereto must be gauged by the language employed. Parol testimony outside the clear language of the assignment has no probative value. Then, too, the formal assignment of November 25, 1949, by its terms only conveyed, if anything, the cause of action that the lessee then had; hence the cause of action for the rental overcharge and attorney's fee perforce of the statute being barred before the assignment was executed, and the defense of limitation having been affirmatively pleaded, appellee acquired no right to sue for the alleged overcharge and attorney's fee. Furthermore, appellee did not by the words of the statute own an interest in the alleged statutory cause of action, nor could he have acquired such ownership by assignment from Teague to the lease estate. If the cause of action for triple damages and attorney's fee was assignable, still the legal nature and effect of the assignment do not support or fix any right to the statutory claim for triple penalty and attorney's fee.

We are further brought to a consideration of whether appellee has an assignable cause of action for the refund of rentals by Lessee Teague for the unexpired term of nine months. The amount of $1,-200 seems not to be in controversy. According to the lease contract, such rentals were paid to the lessor in advance for one year's occupancy of the premises by James Teague and wife (lessees), and by them alone, as "a dwelling house and home, and not otherwise," with the express covenants that the lessees "shall take good care of the property and its fixtures, and suffer no waste; * * * and at the end, or other expiration of the term, shall deliver up the demised premises in good order and condition, * * *. That the lessee shall not assign this agreement, or underlet the premises, or any part thereof * * * without the consent of the lessor in writing; * * *. That in case of default in any of the covenants herein, lessor may enforce the performance of this lease in any modes provided by law, and this lease may be forfeited at lessor's discretion * * *, and lessor's agent or attorney shall have the right, without further notice or demand, to reenter and remove all persons and lessee's property therefrom * * *, or * * * may resume possession of the premises and relet the same for the remainder of the term at the best rent said agent or attorney may obtain * * *."

Appellant, at the time of the lease, was occupying the premises, and, perforce of the terms of the lease agreement, surrendered possession to Teague and his wife. After occupying the leased premises from August 1 to November 1, 1946, the lessee surreptitiously vacated the premises and assigned the lease agreement to Dearborn Stove Company; and, on November 25, 1949, assigned all causes of action which he (Teague) possessed, arising out of the lease transaction, to the Stove Company. The stipulation of facts accompanying this record shows that after Teague had vacated the premises, appellant and his wife re-entered and continued to possess and enjoy such premises for the remainder of the term. There is no evidence as to the rea-

sonable value of such occupancy for such unexpired term, or that appellant should refund any rentals. In plaintiff's (appellee's) petition it is alleged "that at the time of the assignment of such lease, the defendant (appellant) herein had not approved or authorized such assignment; but immediately thereafter did approve and authorize such assignment or waived his right to require his approval of such assignment, but denied the use of the leased premises to plaintiff, and occupied the same, either in person or by other tenants, to the exclusion of the plaintiff; or, in the alternative, immediately after the said assignment defendant agreed to the termination of said lease agreement and a return of the unearned rentals." To the aforesaid pleadings wherein is alleged that the defendant "did approve and authorize such assignment or waived his right to require his approval of such assignment," the appellant urged special exceptions to the effect that such allegations are mere conclusions of law and that there is no disclosure of fact in support of such conclusions. The trial court overruled the exceptions, and to that action of the court appellant assigns error. We think the defendant's exceptions should have been sustained; but in view of our conclusion in this appeal on its merits, the disposition of appellant's assignments is not essential to the disposition of the case. We omit discussion of the assigned errors.

It will be seen from the lease agreement that the liability, if any, incident to re-entry of the premises by appellant, was in privity to Teague; and that the assignments to Dearborn Stove Company do not state that the assignee assumed the lease covenants or agreed to the performance of its terms. The lease was not assignable under the terms of the contract and of the statute, supra; hence when the lessee vacated the premises and declared in the assignment that he had transferred all his rights therein to another, he effectively abandoned the premises and all rights arising therefrom. The assignee acquired no greater rights or causes of action than the lessee possessed at the time of the assignment. The lessor was under no obligation to Teague's as-

signee perforce of the assignment; the lessor never recognized the assignment, but, on the contrary, expressly repudiated the same. In consequence the lessor had the right of re-entry; thus coming into possession of the premises through breach of the conditions and lease covenants, where, by the terms of the lease agreement, there was left in the lessor a contingent reversionary interest to be availed of by re-entry for breach of its conditions. The re-entry implies no intent to terminate liability of the tenant for the payment of rents, nor does the re-entry indicate any intention or purpose to accept the transfer or subletting of the premises, or acceptance of the assignment as a privity of estate or contract between the lessor and the assignee. In the case of Walton v. Steffens, Tex.Civ.App., 170 S.W.2d 534, 537 (ref. want merit), in a situation as here, the court said: "In the absence of evidence of probative force which would authorize a finding that plaintiffs accepted the surrender of and took possession of the premises with intent that the lease contracts should be terminated and defendant should be released from further liability thereunder, the mere taking of possession by plaintiffs on abandonment by defendant could not have this effect. Early v. Isaacson, Tex.Civ.App., 31 S.W.2d 515, writ refused. In IX Texas Law Review, 578, there is an excellent analysis and discussion of this case."

The assignment, without the consent of the lessor, gave no standing to the assignee to maintain the suit against the lessor. 27 Tex.Jur., p. 367, sec. 218; A. Harris & Co. v. Campbell, Tex.Civ.App., 187 S.W. 365. Therefore, having reached the conclusion that the plaintiff had no effective assignable cause of action for a refund of the rents; and, in view of what we have said relative to the overcharge and attorney's fee, the judgment of the court below should be reversed and judgment here rendered, as should have been rendered in the court below, that the plaintiff recover nothing by its suit; accordingly it is so ordered. All costs of suit taxed against appellee.

YOUNG, Justice (dissenting).

On August 1, 1946, Teague, at that time in appellee's employment, leased appellant's residence for one year, paying $1,600 cash in advance rentals (considerably above OPA ceiling price), the instrument reciting "$1,200 cash." After some three months Teague's employment terminated and he moved out of the property, assigning all rights in the unexpired lease term to Dearborn Stove Company, appellant Caples resuming full possession. The suit is in part for a refund of the $1,200 of unearned rentals. Such amount was due Teague under express provisions of the lease and appellee's judgment to that extent should be upheld.

Even assuming a breach of the lease contract by tenant Teague, I have found no case where the lessor has been permitted to reoccupy and use the leased premises for remainder of the term without being required to account for its reasonable rental value. The lease agreement recites: "* * * or lessor's agent or attorney may resume possession of the premises and re-let the same for the remainder of the term at the best rent said agent or attorney may obtain, *for account of the lessee.* * * *." (Emphasis mine.) The courts uniformly hold a landlord to such an accounting. "If the landlord, after the tenant's abandonment of the premises, occupies or makes use thereof, he must, in an action against the tenant to recover rental, account to the defendant for the value of such use." 27 Tex.Jur., p. 312. See, also, Ogus, Rabinovich & Ogus Co. v. Foley Bros. Dry Goods Co., Tex.Com.App., 252 S.W. 1048, to the same effect.

Sole basis of the majority opinion rejecting appellee's claim for refund of rentals appears to be that Teague's chose in action for unearned rent is not assignable. The parties have stipulated in connection with the assignment of August 6, 1946 to Dearborn Stove Company that if Teague, the tenant, "* * * were present upon the trial of this cause as a witness, he would testify that in making such assignment it was his intention to assign and convey to Dearborn Stove Company all of his

rights, title, and interest in and to such lease, together with all causes of action belonging to, or owned by him, or arising out of, or incident to such lease and any transaction connected therewith." Surely there is no doubt in Texas concerning assignability of choses in action. In 5 Tex.Jur., p. 7, the rule is stated: "We have seen that the strict rule of the ancient common law which asserts the nonassignability of choses in action is no longer observed. The Texas courts have broadly stated that any 'species of property is assignable,' and 'that everything which may be called a debt may be assigned, and the assignee may recover either in his own name or in that of his assignor.'" And while the lease contract may not be assigned without the landlord's assent, no such consent was necessary to the assignment by Teague of his *cause of action* for prepaid rentals.

I further differ with the majority holding of no evidence in the record as to reasonable value of appellant's occupancy and use of the premises for the unexpired term, this Court finding in the meanwhile that "the amount of $1,200 seems not to be in controversy." Ample evidence on rental value is reflected in the stipulations of fact, consisting of rent regulations and orders of OPA, one instrument being a report signed by Caples involving the Teague lease, showing rental price to be $100 per month exclusive of guest house and $135 per month inclusive of last-named unit (the Caples lease expressly excluded this guest house, contrary to OPA requirements). Furthermore, the amount of rental agreed upon between the parties and actually paid by Teague to Caples is evidence of probative force with respect to reasonable rental value "for such unexpired term." At least in Hamilton v. State, Tex.Civ.App., 152 S.W. 1117, 1124, writ ref., precisely the same type of evidence was found competent in this connection. The court there held in part, "It is true that what Jeffreys paid is not necessarily the reasonable rental value of the land, but it is a circumstance properly to be given in evidence, tending to show such value * * *."

For another reason the judgment of Judge Bush should be affirmed on this phase of the lawsuit. Appellant did not testify, the following facts, however, being undisputed: That following the written correspondence of August 1946, and in October, Caples came to the office of Mr. Norris, a Dearborn official, and in the ensuing conversation stated that his only concern was to secure a suitable tenant; witness Norris testifying to further statements made by Caples, viz.: "He said he would be glad to contact Mr. Ballew (a tenant suggested by Norris), or maybe someone else, and lease the house to them, and that the amount of rental which he secured up to the end of this lease term would be paid to the Dearborn Stove Company * * *. Mr. Caples continued and said that his only interest in the matter was to secure a tenant who would reasonably well take care of his house and property and the contents and so forth * * *. Well, he just said he would pay the money that was secured from them up to the amount of the lease, *or the amount that we had paid Mr. Teague*." (Emphasis mine.) It is obvious that after above conference, Mr. Caples simply decided to reoccupy the property himself rather than select a suitable tenant.

The amount of prepaid rent not being in dispute and appellant having reoccupied and used the leased property for the unexpired term, surely he is obligated in law as well as good morals to pay Teague's assignee the amount of these unearned rentals. When a trial is to the court without findings of fact or conclusions of law, the judgment there rendered will be sustained on appeal if it can be done upon any theory supported by the record. Appellee is entitled to a recovery in amount of $1,200 and in this respect the judgment under review should be affirmed.