DEARBORN STOVE COMPANY v. W. J. CAPLES.

No. A-2831. Decided January 10, 1951.
Rehearing overruled February 14, 1951.
(236 S. W., 2d Series, 486.)

564

*W. Autry Norton, Worsham, Worsham & Riley* and *Jas. Irion Worsham,* all of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that the re-entry by defendant together with other circumstances in evidence, implied no intent to accept a surrender of the lease and terminate liability of the lessee for the payment of the rent; that after an assignment of the lease defendant was entitled to reoccupy and use the leased premises for the remainder of the term without being required to account for their reasonable rental value; and also in holding that there was no evidence in the record as to the reasonable value of the occupancy and use for the unexpired term. Edwards v. Worthington, 118 S. W. 2d 328; Walton v. Steffens, 170 S. W. 2d 534; Hamilton v. State, 152 S. W. 1117; 27 Texas Jur. 312, 315.

*R. T. Meador, M. S. Church, W. F. Bane* and *Lee S. Bane,* all of Dallas, for respondent.

The Court of Civil Appeals did not err in holding as it did on the proposition set forth in petitioner's brief. Bowles v. American Stores Inc., 139 Feb. 2d 377; O'Sullivan v. Felix, 233 U. S. 318, 34 Sup. Ct. 596, 58 L. Ed., 980; Ogus, Rabinovich and Ogus Co. v. Foley & Bros. Dry Goods Co., 252 S. W. 1048; 27 Texas Jur. 312.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

Petitioner, Dearborn Stove Company, a corporation, sued, and in the trial court had judgment, after a nonjury trial, against the respondent Caples for claims arising from a "pre-paid" one year written residential lease executed on August 1, 1946, by Caples as lessor to one Teague as lessee and purportedly assigned by Teague to petitioner, along with all causes of action accruing to Teague thereunder. Petitioner's claims in brief

were for (a) sums due from respondent Caples by reason of his having re-entered the premises and occupied them from about the end of October 1946 onward; (b) triple damages and attorney fees based on the rental being in excess of that permitted by applicable regulations and orders issued under the federal Emergency Price Control Act. No findings of fact of the trial judge were made or requested and no point is made in connection with their absence. On appeal by the defendant (respondent) Caples, the Court of Civil Appeals, over a dissent, reversed the judgment and denied petitioner any recovery. 231 S. W. 2d 669. Petitioner here reurges the validity of both its claims as allowed by the trial court.

As to the claim based on respondent's reoccupancy of the premises, the material facts are stipulated or otherwise undisputed as follows: The premises were rented "furnished". The lease was expressly nonassignable without consent of respondent and for a fully prepaid consideration or "rent", recited as $1200, but actually $1625. The lessee, Teague, was the manager of petitioner Stove Company and had leased the premises with the foreknowledge and positive encouragement of petitioner, but only a few days afterwards "resigned" or lost his employment, so that the responsible executives of petitioner "felt there was a moral obligation on the part of the company to see that he didn't suffer a financial loss because of it (the lease)". Accordingly, as part of settling affairs with Teague, petitioner, on or about August 6, 1946, reimbursed him the full consideration he had paid for the lease, receiving in turn from him a brief and informal "assignment" of "all my rights in this lease" endorsed upon the lease document. At that time Teague declared that he was very happy to make the assignment, get the payment and "get out from under". A few days later an executive of petitioner advised respondent by letter of the purported assignment, suggesting that petitioner might in turn assign the lease to some third party acceptable to the respondent lessor or simply give it up to respondent upon refund by the latter of the "unearned" part of the prepaid rental. Respondent promptly replied by letter, stating that the lease was by its terms non-assignable and prohibiting petitioner to enter or authorize others to enter upon the premises. Nothing further transpired until about two months later, when, the lessee Teague being evidently still in possession, the respondent lessor called on the above-mentioned executive and in effect told him that, while not recognizing petitioner as having any right to enter, or permit entry upon, the premises, the respondent, should he find a new and satisfactory tenant, including possibly one suggested by peti-

tioner, would pay to petitioner "the money that was secured from them up to the amount of the lease, or the amount that we (petitioner) had paid Mr. Teague". About two weeks thereafter Teague "vacated" the premises, and the respondent lessor and his family forthwith reoccupied them. The record discloses no exactly contemporaneous explanatory declarations or acts of Teague or respondent bearing on the intended effect of this change of possession, but almost immediately after it occurred, respondent, in reply to an enquiry from petitioner as to the status of affairs between them, stated briefly that he had consulted his attorney and would not discuss the matter further.

■ Viewing the question first in a general way, while it may seem unjust under any circumstances for the landlord to retain rent paid in advance and at the same time himself enjoy free occupancy of the leased premises for most of the period which the prepayment was intended to cover, it may be less so when we consider the long established rule that rent is not "apportionable" in the sense of allocating fractions of its amount to corresponding fractions of the period which it was agreed to cover. Thus, for example, when ownership of the reversion changes during a year, of which the rental is stipulated as payable on the last day, the new owner is entitled to the full payment, though he has owned the premises perhaps only a month. Upon the same principle, where a lease for a term of several years is made upon prepayment for the final year and the lessee obligated to pay also a sum for each intervening year, there can ordinarily be no recovery back of the advance payment, even though the lessor should accelerate the end of the lease for bankruptcy of the lessee prior to the final year, or if, for another example, the building constituting the leased premises should be destroyed by fire during an early year of the term. Porter v. Sweeney, 61 Texas 213, 216; Hearne v. Lewis, 78 Texas 276, 14 S. W. 572; Galbraith v. Wood, 124 Minn. 210, 144 N. W. 945, 50 L.R.A. (N.S.) 1034; Schoen v. New Britain Trust Co., 111 Conn. 466, 150 Atl. 696; Evans v. McClure, 108 Ark. 531, 158 S. W. 487; Sinclair v. Burke, 133 Ore. 115, 287 Pac. 686; Bacciocco v. Curtis, 12 Cal. 2d 109, 82 Pac. 2d 385, 387; C. M. Staub Shoe Co. v. Byrne, 169 Cal. 122, 145 Pac. 1032. See also case note to Smith v. J. Weingarten, Tex. Civ. App., 120 S. W. 2d 878, er. dism'd, in 17 Tex. L. Rev., 500; 1 Tiffany, Landlord and Tenant, sec. 179 et seq. The matter of recovering back rentals required to be prepaid under the lease but not "earned" is accordingly quite different from that of whether an anticipatory termination of the lease does or

does not relieve the lessee of liability for rentals which would otherwise come due after the termination.

■ Turning now to specific contentions made, we consider untenable the theory that the lessee's otherwise invalid assignment was, through estoppel or otherwise, validated by the respondent's above-mentioned statements about a new tenant, and that therefore respondent is liable in damages for wrongful ouster of petitioner itself as holder of the lease. The statements indicate at most a then intention to give petitioner the benefit of such new lease arrangement, if any, as respondent might choose to make with third persons and suggest an understanding that the lease was terminated rather than a recognition by respondent that petitioner had acquired some legal right in the premises by the "assignment". The verbal suggestion by petitioner's executive of a prospective new tenant, with whom respondent might negotiate, was actually an acquiescence in the position taken by respondent from the beginning, to wit, that the purported assignment from Teague conflicted with an explicit provision of the lease (as it did also with the terms of Art. 5237, Vernon's Tex. Civ. Stats. Ann.) and failed to give petitioner the essential rights, such as that of entry on the premises, which an assignment would normally give, if it gave anything.

Petitioner also argues that, even should it not have become the owner of the lease, the latter yet remained in effect, so that the tenant, Teague, thus had a cause of action against respondent for unlawfully re-entering. In this connection, the record reflects that on November 25, 1949, some two years after this suit began, Teague executed to petitioner a formal assignment of all causes of action he might have against respondent in connection with the lease. Alternatively—if inconsistently—petitioner asserts that, under the facts, the lease was surrendered by operation of law and ceased to exist at the end of the third month of the term, when Teague moved out and respondent re-entered; the effect of such a surrender, which is often held to destroy the tenant's future obligations to pay rent, being to give Teague (or his assignee) a cause of action for return of the "unearned rentals" theretofore paid in advance. While the respondent disputes this assertion of surrender, though apparently thus concurring with petitioner's assumption that a surrender, if established, would entitle the tenant (or his assignee) to recover the "unearned" rentals, we, for our own part, agree with petitioner that there was a surrender, but disagree with the assumption of both parties that it entails a return of the rentals or other recovery.

■ A surrender by operation of law may be effected through the abandonment of the premises by the tenant and re-entry by the landlord. 2 Tiffany, Landlord and Tenant, sec. 190 c, p. 1332 et seq., and cases collected in 51 C. J. S. Landlord and Tenant, sec. 125 n. 18, and 16 R.C.L., p. 1154 n. 12; see also Comment in 9 Tex. L. Rev. 578. Decisions such as Early v. Isaacson, Tex. Civ. App., 31 S. W. 2d 515, er. ref., treated in the last mentioned Comment, do not establish the contrary, however much they purport to condition the effect of the change of possession upon the intent of the parties concerned. In the instant case, the lessee of a "prepaid" lease, after receiving from his ex-employer reimbursement for what he had prepaid, in addition to enjoying free occupancy of the premises for about three months, is "happy * * * to get out from under" and upon making an obviously invalid assignment of the lease, vacates the premises, giving no further indication at any time of claiming continued right therein. The lessor, having rejected the purported assignment and spoken of the lease as if it were terminated, reoccupies the premises with his family promptly after they are vacated and without evidencing any limitation of his purpose in so doing, such as to make repairs or merely protect the property. At about the same time he refuses even to talk to the tenant's purported assignee and remains in possession thereafter. The change of possession from the lessee to the lessor, taken with the other admitted facts mentioned, is so inconsistent with the idea of continuance of the leasehold estate as to require the conclusion of a surrender by operation of law. The surrender of a "prepaid" lease, though naturally no particular hardship on the landlord, who already has his rent, may, indeed, be unusual from the standpoint of the tenant, who thus gives up what he has paid for. But in the instant case the intent of the tenant to sever his connection with the property is established beyond question, unless his purported assignment be taken to establish an intent that the lease remain in effect. Though in the ordinary case, an assignment by the tenant indicates the contrary of a surrender, in the present case the attempted assignment merits no such significance. It can only be regarded as a consciously ineffective gesture in breach of the plain terms of the lease. And clearly Teague never intended to "sell" the lease in any event, but simply accepted the money petitioner felt morally obligated to reimburse him and incidentally signed the transfer of "all my rights in this lease". Certainly here was no indication that Teague might, under some circumstance or other, return to claim the premises. What petitioner assumed or intended one way or the other in the mat-

ter is not important, petitioner being neither the lessee nor a valid assignee of the lease.

Petitioner, in arguing that there was a surrender, properly distinguishes the case of Early v. Isaacson, supra, on the ground that the instant facts are more cogent for surrender. Here the intent of the lessee not to return to the premises is clear, and here, where we have a "prepaid" lease, the willingness of the lessor to accept surrender is more easily to be assumed than in the Early case, in which surrender was considered to mean release of the lessee from future rental payments. The Early case, incidentally, has been criticized for its restrictive view of the doctrine of surrender by operation of law, and it is pointed out that, under Randall v. Thompson Bros., Tex. Ct. of App., 1 White and Willson, sec. 1102, there is little need for such attitude, if the motive for it is one of fairness to landowners, surrender of the leasehold estate not meaning necessarily a release of the tenant's contractual obligation under the lease agreement to pay rent. See 9 Tex. L. Rev., supra, 585, also McCormick, The Rights of Landlord upon Abandonment of the Premises by the Tenant, 23 Mich. L. Rev., 211, 217.

But, as stated, petitioner errs in assuming that the surrender gave the lessee a cause of action to assign. Since it ended the leasehold, the respondent clearly had the right to continue occupying his own property without accounting to anyone for so doing, there being no contractual covenant in the lease to the contrary. And since, under the rule first above stated, the prepaid rent was not "apportionable" as between one part of the lease term and another, but having been due and paid at the start of the lease, was paid for good, the premature end of the term did not entitle the lessee to a refund. The Court of Civil Appeals therefore correctly reversed and rendered petitioner's judgment on this phase of the case.

■ Petitioner's claim for triple damages and attorney fees arises from the apparently disputed fact that the aforementioned rental exacted of Teague exceeded by $174.99 the amount permitted by applicable orders and regulations issued under the federal Emergency Price Control Act as amended and extended (U.S.C.A., Title 50 Appendix, sec. 925(e)) and from the further fact of the purported assignment or assignments to petitioner by Teague of his causes of action. While petitioner thus acquired the right to recover the actual overcharge of $174.99, it acquired no right to Teague's claim for double that amount (which would make up the balance of the

"triple damages") and attorney fees, because the latter claim was not assignable. This follows from our recent decision in Basham v. Smith, 149 Texas 279, 233 S. W. 2d 297. Rights of action of this type which do not survive death (whether death of the owner of the right or the party against whom the right lies) are considered nonassignable. See Wogahn v. Stevens, 236 Wis. 122, 294 N.W. 503, 133 A.L.R. 1033; Strickland v. Sellers, 78 F. Supp. 274 (N.D.Tex.). Decisions such as Hicks v. Bekins Moving & Storage Co., 87 F. 2d 583 (9th Cir.) upholding assignments of causes of action for triple damages arising under the Sherman Act are perhaps in conflict with this view, but we class them with those decisions of the intermediate federal courts recognizing survival of the same causes of action, and, as in Basham v. Smith, supra, do not assign controlling importance to them in our interpretation of the federal law on the points here involved. Hicks v. Bekins Moving & Storage Co., it may be noted, does recognize the principle that causes of action which do not survive death are nonassignable. Since, however, the "bare overcharge", as distinguished from the additional sums allowed by the statute, was held to survive death in Basham v. Smith, it must also be held assignable, and petitioner is accordingly entitled to recover this amount and it only. That the lease itself was not validly assigned or assignable does not prevent a valid assignment of the overcharge claim. Assuming the earlier assignment of "all my rights in this lease" was not broad enough to include the claim, the formal instrument of November 25, 1949, undoubtedly was. The fact that the latter occurred after expiration of the one year limitation period provided by the federal statute does not defeat the claim, because petitioner filed this suit, including that very claim and asserting itself to be assignee thereof, within the limitation period. Art. 5539b, Vernon's Tex. Civ. Stats. Ann.

It thus appears that the Court below was correct and the trial court in error regarding all of petitioner's claims, except as to the one item of $174.99 last above-mentioned. Our conclusion regarding the latter, however, requires that the judgment of the Court of Civil Appeals be reversed. That of the trial court must be reformed so as to deny petitioner recovery except to the extent of $174.99 and, as so reformed, affirmed. It is so ordered. Costs in this court are divided equally between the parties. Costs in the Court of Civil Appeals are taxed against petitioner.

Opinion delivered January 10, 1951.

ON REHEARING.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

Consideration of the motion for rehearing develops that we were in error as to the amount of the rental overcharge, which petitioner is entitled to recover, and which is $699.96, rather than $174.99. Though the rent is not apportionable for the purposes of petitioner's claim for "unearned rentals," which it also sought, doubtless it is the intent of the federal rent control regulations fixing maximum monthly rentals, that, in a case of a year's prepaid rent like the present, the prepayment shall, for the purposes of those regulations, be treated as if it were made by the month in equal installments. Petitioner actually sought, as a matter of general law, recovery of "unearned rentals" of over $1500, or practically the full amount paid for the lease and, at the same time, sought triple damages and attorney fees under the federal law based on excessive charge of $58.33 per month for the entire lease period. The trial court awarded $1200 on the "unearned rentals" theory, evidently basing it on the fact that the respondent lessor had reentered the premises at the end of the third month of the lease and, evidently to avoid a double recovery, limiting the award of triple damages under the federal law to a sum based on that part of the rent which the court allocated to the first three months. The excess rental, on which the court thus based the triple damages, amounted to $174.99 ($58.33 per month for three months). In seeking to uphold the trial court judgment as rendered, and in connection with its argument on the assignability of the claim under the federal law, petitioner, in a supplemental brief submitted prior to our decision, stated that "in any event, on the authority of Basham v. Smith, the judgment of the trial court for petitioner should be affirmed in so far as it awards recovery for the 'bare overcharges', $58.33 per month for three months, or $174.99." Of course, had petitioner foreseen that we would deny altogether its claim for "unearned rentals", it would have used the figure of $699.96 instead of $174.99 and the words "twelve months" instead of "three months", since the larger claim would not then have raised a question of double recovery. However, the quoted statement, with our own inadvertance, served to produce the error mentioned.

Our original opinion accordingly stands corrected by substituting the figure $699.95 for that of $174.99 and with this correction, the motion for rehearing is overruled.

Opinion delivered February 14, 1951.