**MOSER COMPANY and Robert H. Thomas, Appellants,**

v.

**AWALT INDUSTRIAL PROPERTIES, INC., Appellee.**

No. 9028.

Court of Civil Appeals of Texas, Amarillo.

July 11, 1979.

Mark Mueller, Dallas, for appellants.

Jackson, Walker, Winstead, Cantwell & Miller, D. L. Case, C. Steven Matlock, Dallas, for appellee.

REYNOLDS, Chief Justice.

We hold, on this record, that a broker-negotiated lease of a separated warehouse space in a building was terminated, rather

than modified and renewed, by the owner-tenant's substitution of a different separated space in the building on different terms. Accordingly, we affirm the trial court's instruction of a verdict against the broker in this action to recover renewal commissions on rentals payable under a subsequent lease of the substituted property.

Awalt Industrial Properties, Inc., owns a tract of land containing six lots numbered 31 through 36 and located on Pittsburg Street in Dallas, Texas. Although a single building has been constructed on the land, it is divided into three warehouse spaces separated by steel columns covered with five-eighths inch sheetrock. Each warehouse space covers two lots, has a separate street address and is leased independently of the others. For clarity, lots 31 and 32 located at 134–136 Pittsburg Street will be referred to as Space I, lots 33 and 34 located at 140–142 Pittsburg Street will be referred to as Space II, and lots 35 and 36 located at 146–148 Pittsburg Street will be referred to as Space III.

Moser Company, acting through its agent, Robert H. Thomas, negotiated a written lease for Awalt with Arthur J. Beacom & Co. The lease covered Space III, which was to be used as Beacom's office and warehouse, and was for a term of five years beginning 1 January 1969 with monthly rentals of $785. The 1969 lease included the proviso that Awalt would pay to Moser Company, in consideration for negotiation of the lease, a monthly commission of six percent of the monthly rental payable "for the primary term of this lease and including any renewals of this lease." The lease did not contain a renewal option.

In December of 1970, Beacom subleased Space I from another tenant for the period 1 January 1971 to 1 October 1974. In 1971 Beacom wanted to exchange Space III for Space II, which was being leased by the Clancy Corporation. Beacom and Clancy, after reaching an agreement as to the exchange, sought authorization from Awalt. J. P. Awalt, Sr., then president of Awalt Industrial Properties, Inc., approved the exchange through a series of letters which,

with omissions of the formal parts and designations of Spaces substituted for street addresses, read, in part:

August 9, 1971

Dear Mr. Clancy:

It is my understanding that you and Mr. Arthur Beacom have both agreed on making an exchange of spaces in our building at Pittsburg Street as follows: You are to give to the Beacom Company [Space II] and exchange [it] for the area, which the Beacom Company now occupies, at [Space III]. Your lease for [Space III] is to be for the same period of time and at the same rent you are now paying for [Space II], which is $863.00 per month. The terms of your existing lease at [Space II], will be the same for [Space III].

\* \* \* \* \* \*

J. P. Awalt, Sr.

—————

August 9, 1971

Dear Mr. Beacom:

\* \* \* \* \* \*

From your letter and from my brief telephone conversation with Mr. Tom Clancy, it is my understanding that you have both agreed on making an exchange of spaces in our building at Pittsburg Street as follows:

You are to give up the area which you occupy at [Space III] and exchange it for the area which Mr. Clancy now occupies at [Space II]. Your lease for [Space II] is to be for the same period of time and at the same rent you are now paying for [Space III], which is $785.00 per month.

\* \* \* \* \* \*

J. P. Awalt, Sr.

—————

August 9, 1971

Dear Mr. Beacom:

Assuming that you will move into [Space II], which [is] now occupied by Mr. Clancy, your lease will extend to January 1st, 1974, as per your existing lease at [Space III]. It is my understanding you will want to extend your lease at [Space II]

for an additional nine months to October 1st, 1974 to coincide with the maturing date of your . . . [sub]lease.

This is to advise you that we will agree to this extension of your lease, provided you will agree to pay a rental of $900.00 per month for the additional nine months. This is less than sixty cents (60¢) per square foot and I believe you know it's below present day rentals.

\* \* \* \* \* \*

J. P. Awalt, Sr.

---

August 11, 1971

Dear Mr. Awalt:

In reply to your letter of August 9th, the change of spaces as you outline them is according to our understanding.

\* \* \* \* \* \*

Arthur J. Beacom

---

August 11, 1971

Dear Mr. Awalt:

Thank you very much for your second letter of August 9th, wherein you agree to extend the lease on [Space II] for an additional nine months, to coincide with the maturing date of our . . . [sub]Lease.

We will agree to pay the increased rental of $900 per month for the last nine months, as suggested by you.

\* \* \* \* \* \*

Arthur J. Beacom

During 1973, Thomas talked with Awalt, suggesting a price in the event of a renewal. At Awalt's direction, Thomas wrote Beacom to try to get an offer, but Beacom responded that it was too early to talk about a renewal.

In March of 1974, Mr. Awalt wrote Mr. Beacom, reminding him that the leases were about to mature and asking him to indicate whether he wished to "renewing [his] lease now on the basis of 85¢ per square foot . . . ." A new lease was executed on 15 April 1974 covering Space I and Space II for a term of seven and one-half years beginning 1 October 1974 at a monthly rental of $2,193. Neither Moser Company nor Thomas was involved in the negotiation or execution of this lease, and no provision was included for a broker's commission.

Although the primary term of the 1969 lease covering Space III expired 31 December 1973, Awalt paid Moser Company the regular commission called for by that lease until October, 1974. Thomas testified that the commissions were paid, albeit not on the increased rental amount, by agreement with Mr. Awalt, who emphasized that the commissions paid after 1 January 1974 were paid by mistake.

After Awalt ceased paying commissions, Moser Company and Robert H. Thomas brought this suit. They sought renewal commissions of six percent of one-half of the rentals for both Space I and Space II during the seven and one-half years term of the 1974 lease, together with attorney's fees, on the theory that the 1974 lease was a renewal of the 1969 lease as modified by the parties. Awalt answered and defended on the ground that the 1969 lease was not renewed and that no commissions are payable under the 1974 lease because there is no supportive written contract or memorandum therefor as required by Tex.Rev.Civ. Stat.Ann. art. 6573a, § 20(b) (Vernon Supp. 1978–1979).

At a jury trial, a verdict was instructed in favor of Awalt. From the take-nothing judgment rendered thereon, Moser Company and Thomas have perfected this appeal, contending they evidenced a prima facie entitlement to broker's commissions.

 To recover a real estate broker's commission, one must meet the requirements of Section 20(b) of the statute, which provides that:

An action may not be brought in a court in this state for the recovery of a commission for the sale or purchase of real estate unless the promise or agreement on which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged or signed by a person lawfully authorized by him to sign it.

A lease transaction is a "sale" within the contemplation of this statute. *Bachman Center Corporation v. Sale,* 359 S.W.2d 290, 293 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.). The agreement or memorandum which is necessary for recovery must meet four requirements: (1) it must be in writing and must be signed by the person to be charged with the commission; (2) it must promise that a definite commission will be paid, or must refer to a written commission schedule; (3) it must state the name of the broker to whom the commission is to be paid; and (4) it must, either itself or by reference to some other existing writing, identify with reasonable certainty the land to be conveyed. *Knight v. Hicks,* 505 S.W.2d 638, 642 (Tex.Civ.App.—Amarillo 1974, writ ref'd n. r. e.).

Indisputably, the 1969 lease met all of the statutory requirements for the recovery of broker's commissions. Equally undisputed is that the 1974 lease did not, unless it can be said, as Moser Company and Thomas insist, that it was a renewal of the 1969 lease which had been modified through the series of letters quoted above.

■ Parties having the power to make a contract have the power to modify it. *Rhoads Drilling Co. v. Allred,* 123 Tex. 229, 70 S.W.2d 576, 583 (1934). However, because modification is a change or alteration which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject matter intact, the power to modify does not imply a power to substitute a thing entirely different or confer the power to destroy. *Webb v. Finger Contract Supply Company,* 447 S.W.2d 906, 908 (Tex.1969).

■ Contrastingly, the parties may discharge themselves from their respective duties under a contract by a mutual agreement to rescind their contract. Usually, the rescission is expressed in the form of an offer by one and an acceptance by the other, although the agreement of rescission can be made tacitly. *Texas Gas Utilities Company v. Barrett,* 460 S.W.2d 409, 414 (Tex. 1970). In the same vein, a lease agreement may be terminated by the mutual consent of the lessor and lessee. *Barret v. Heartfield,* 140 S.W.2d 942, 944 (Tex.Civ.App.—Beaumont 1940, writ ref'd). Moreover, absent a specifically expressed termination, a lease is terminated by operation of law when the tenant surrenders the leased premises and the owner relets the premises for his own benefit. *Dean v. Lacey,* 437 S.W.2d 433, 438 (Tex.Civ.App.—Beaumont 1969, no writ); *South Falls Corporation v. Kalkstein,* 349 F.2d 378, 384 (5th Cir. 1965).

■ Given the operation of these principles, the letters which Moser Company and Thomas assert merely modify the 1969 lease amount to much more than a mere change or alteration in the details of that lease. By their letters, Awalt and Beacom, agreed, at least tacitly, to a rescission of the 1969 lease, for the letters, together with the actions taken pursuant thereto, destroyed the validity of the 1969 lease by substituting for its paramount subject matter an entirely different property, terms and rentals without agreeing, as Awalt and Clancy contemporaneously agreed, to retain the other terms from their prior lease. And even though the letters do not expressly state a termination of the 1969 lease, the substitutions agreed and acted upon without the retention of any of the terms of the 1969 lease is so inconsistent with a modification as to require the conclusion of a termination of the 1969 lease by operation of law. *Accord, Dearborn Stove Co. v. Caples,* 149 Tex. 563, 236 S.W.2d 486, 489 (1951). Manifesting the termination was Beacom's surrender of Space III, the premises covered by the 1969 lease, and Awalt's reletting of the same for its own benefit.

■ There being a termination of the 1969 lease, there could be no renewal of its provision for broker's commissions. This conclusion forecloses all of the claims advanced for recovery of any broker's commissions under the 1974 lease.

The trial court's judgment is affirmed.

COUNTISS, J., not participating.