Argued September 15; re-argued and submitted November 20; affirmed December 8, 1931; rehearing denied January 5, 1932

# L. B. MENEFEE LUMBER CO. *v.* ABRAMS

(5 P. (2d) 709)

J. F. *Hodler,* of Portland, for appellant.

W. B. *Shively,* of Portland, for respondent.

ROSSMAN, J. This is an appeal by the defendant from a judgment in favor of the plaintiff in a forcible entry and detainer action. The complaint is in the form prescribed by section 5-214, Oregon Code 1930, and concerns premises at No. 151 Third street, Portland, being a storeroom on the ground floor of the Alisky building. The answer, after denying the allegations of the complaint, averred by way of new matter that the defendant

"is holding the premises set forth in the plaintiff's complaint under a lease dated July 1st, 1929, for a period of four years beginning July 1st, 1929, and ending June 30th, 1933 at a monthly rental of Two Hundred Sixty Dollars ($260.00) a month and this defendant took possession under the said lease and as part consideration thereof and by the terms of said lease, advanced the sum of Nine Hundred Dollars ($900.00) to cover any delinquences in the payment of the said rent and as security for the performance of the conditions of the said lease."

Continuing, this portion of the answer alleged that the plaintiff seeks to rescind the lease without "any restoration of the status quo" and that the interposition of a court of equity is necessary. A second subdivision of the new matter alleged in the answer recites:

"That the fourth paragraph of the said lease contains a provision that the defendant shall occupy the said premises 'For the sale at retail of hardware, sporting goods, electrical supplies, paints, household supplies and builders' supplies, and for no other business or purpose whatsoever without the lessor's consent, and in this connection the lessor agrees that while this lease is in effect, he will not rent any other space on the ground or main floor of said Alisky building to any other tenant for the same business.' And the defendant says that notwithstanding this aforesaid term in the said lease, the said plaintiff has rented and continues to rent to other persons a part of the said Alisky

building on the ground floor to carry on a competitive business, namely, the business of selling sporting goods and other commodities, and that while this breach of the lease continues, this said plaintiff is in no position to seek to enforce any of the terms of the said lease against this defendant."

A third subdivision of the new matter reaverred the foregoing "by way of counterclaim" and concluded with the allegation "this defendant and counter-claimant desires that this lease be specifically enforced and that this plaintiff be compelled to carry out the terms thereof." The answer concluded with a prayer for judgment against the plaintiff in the sum of $900.00. During the trial the defendant was permitted to amend his answer so that it alleged an injury to his business in the amount of $3,000.00 damages, and prayed for the recovery of that sum in addition to the $900.00; but since the defendant concedes that the proof does not sustain this allegation, we shall omit further reference to it.

The reply denied the allegations of the first subdivision of the new matter of the answer. Replying to the second subdivision it admitted that the lease executed by the parties contained the provision therein recited but denied all other portions. Further, the reply admitted that the defendant was the plaintiff's tenant for a term of four years at a rental payable at the rate of $260.00 a month except the last three months, and that the defendant went into possession, conducting upon the leased premises a hardware business. All other allegations of the answer were denied. By way of new matter the reply alleged that July 1, 1929, plaintiff and defendant entered into a lease of the premises at 151 Third street for a term of four years beginning July 1, 1929, and ending June 30, 1933; that

the total rental for the term was the sum of $11,703.00 payable in monthly installments of $260.00 to and including the month of March, 1933, and at the rate of $1.00 each for the months of April, May and June, 1933. Next, the new matter averred that the installment of rent due June 1, 1930, had not been paid. It further alleged that the lease contained a provision whereby the defendant admitted knowledge of the occupancies of the Alisky building at the time of the execution of the lease and with all lines of business conducted by the tenants; further, that he waived and released all objections and claims which he might have by reason of any business conducted in the building by any tenant and all demands and rights of action which might accrue to him during the term of the lease by reason of the continued conduct of any business by any tenant. The new matter concluded with an allegation that all tenants on the main floor of the Alisky building at the time when the action was filed were the same tenants that were there July 1, 1929.

At the beginning of the trial the parties stipulated that a lease was executed by them July 1, 1929. This lease was for a four-year term beginning July 1, 1929, and ending June 30, 1933, of the contested premises for a rental of $11,703.00, payable in monthly installments of $260.00 on the first day of each month "beginning with the first day of July, 1929, and continuing thereafter to and including the month of March, 1933, and $1.00 on each of the first days of April, May and June, 1933; all of said monthly installments to be paid in advance on the first day of each and every month during the term hereof  *  *  *." The lease further provided:

"During the term of this lease, said leased premises may be operated and used by the lessee for the follow-

ing purpose and business, to-wit: for the sale at retail of hardware, sporting goods, electrical supplies, paints, household supplies and builders' supplies and for no other business or purpose whatsoever without the lessor's consent, and in this connection the lessor agrees that while this lease is in effect he will not rent any other space on the ground or main floor of said Alisky building to any other tenant for the same business. The lessee hereby expressly consents to the tenancy of Phil Holmes in said building and to his conducting during the whole term of this lease the kind of business in which he is now engaged. The lessee further consents to, approves and confirms all of the present occupancies and lines of business now being conducted in said Alisky building; waiving and releasinng any and all objections, claims and demands which he may have, or claim to have in relation to any thereof and any and all claims, rights of action and damages which he may have, or claim to have in connection with any line of business heretofore conducted in said building by any of the tenants therein, and waiving and releasing all claims, damages and rights of action which may accrue to him during the term of this lease by reason of the continued conduct of any line or kind of business now being conducted in said building.''

The lease made no mention whatever of the $900.00 referred to in the answer unless the following applies to that sum:

''* * * in the event of any fires or other disaster which occurs prior to March 1, 1933, (and) the lessor herein elects not to rebuild said building, the said lessor shall pay to the said lessee, the sum of $900.00 in cash;'' and ''it is further understood ·and agreed that the lessor herein may, in the event of any bona fide sale * * * of the real estate on which said Alisky building is situated, or in the event that the lessor desires to construct a new building on said premises, at any time cancel this lease by depositing in the United States postoffice, postage prepaid, a notice addressed to the said lessee at Third and Morrison

streets, Portland, Oregon, giving unto said lessee three (3) months' written notice * * * and the lessee agrees to vacate * * *. The lessee further agrees to deliver unto the order of the lessor thirty (30) days after the receipt of said notice of cancellation, his copy of this lease * * * the lessor agrees to pay unto the order of the said lessee, if the lessee is obliged by said notice to vacate said premises on or before March 1, 1933, the sum of Nine Hundred ($900.00) Dollars plus the sum of Fifty ($50.00) Dollars per month for each and every month between the date fixed in said notice for the termination of this lease and March 1, 1933.''

The evidence indicated that the present lease was preceded by two others. One of these was dated April 13, 1927, and was for the term of ten years beginning June 1, 1927, and terminating May 31, 1937. The premises it described are the same as those mentioned in the lease of July 1, 1929, with the exception of a small area 6 by 16½ feet in size. It recited: ''Witnesseth: For and in consideration of the sum of Nine Hundred ($900.00) Dollars this day paid to the lessor, the receipt whereof is hereby acknowledged, and of rents, covenants and agreements hereinafter specified and contained to be paid, kept and performed by the lessee, the lessor has let * * *.'' The rental stipulated in the lease was the sum of $35,464.80 payable in monthly installments of $295.40, except for the months of March, April, and May, 1937, for which a rental of $1.00 per month was made payable. The lease of May 9, 1927, was between the same parties and described an area 6 by 16½ feet in size immediately adjacent to the premises mentioned in the lease of April 13, 1927. The lease of May 9 expressed a purpose to add to the space mentioned in the former lease the small area to which we have just made reference. This lease recited: ''Now,

therefore, in consideration of the premises and in consideration of the sum of $45.00 this day paid to the said lessor, receipt whereof is hereby acknowledged and of the covenants and agreements hereinafter specified and contained to be kept and performed by said lessee; the said lessor has rented * * *.'' The term of this lease was ten years beginning June 1, 1927, and ending May 31, 1937. The rental was the sum of $1,755.00, payable in monthly installments of $15.00 except for the month of February, 1937, for which $12.00 was payable, and for the months of March, April and May of 1937, for which $1.00 monthly was payable. The lease of July 1, 1929, being the one mentioned in the answer, described as the premises to which it was applicable, the. combination of the two areas mentioned in the foregoing leases. Its only reference to these two is the following: ''Those certain leases heretofore entered into between the parties, dated April 13th and May 9th,. 1927, are hereby cancelled and held for naught, the same being of no further force or effect whatsoever.''

The evidence discloses that the circumstances which caused the parties to draft and execute the third lease was the fact that on or prior to June 30, 1929, the defendant had become indebted to the plaintiff by reason of the above leases in the sum of $1,651.58, and the parties in the adjustment of that debt decided to effect a new lease. They thereupon drafted and executed the lease of July 1, 1929.

■ Upon the issue based upon the charge that the plaintiff had permitted another tenant upon the ground floor to compete with the defendant's business, the evidence disclosed the following: One Oscar Olsen conducted a cigar store in the storeroom at the corner of

Third and Morrison streets in the Alisky building, being a space about 15 by 18 feet in area. He also had a small stock of pocket knives, key chains, flashlights, safety razor blades, safety razor sharpeners, and three baseball mitts. The evidence established, without serious contradiction, that Olsen dealt in all of above merchandise on July 1, 1929, when the above lease was executed, with the exception of baseball mitts. Applying the above quoted provisions of the lease, wherein the defendant approved all of the tenancies in effect on July 1, 1929, and agreed to waive and release all claims against his landlord on account of the continued conduct by any tenant of any business at that time being conducted in the building, it is evident that no actionable breach has been disclosed, unless the possession by Olsen of a stock of three baseball mitts constituted such a breach. The evidence, without contradiction, showed that Olsen's store received these three mitts approximately four months before the present suit was instituted; that the defendant never complained to the plaintiff concerninng the presence of these three articles in Olsen's store; that none of the mitts was sold except one which was purchased by a friend of the defendant whom the latter directed to make the purchase for evidental purposes only; and that Olsen received these mitts as a premium from a manufacturer from whom he had purchased a quantity of candy. The defendant offered no proof that the presence of the mitts in Olsen's establishment had injured the defendant's business. We are satisfied that this item of proof supplies the defendant with no defense whatever. It is well established that the breach by the lessor of a covenant of the character upon which the defendant relies constitutes no defense whatever to a summary action of this character. It has been many times

pointed out by the authorities that the purpose of forcible entry and detainer statutes to provide the landlord with an adequate and summary remedy for obtaining possession of the leased premises withheld by the tenant, in violation of the covenants of his lease, would be entirely frustrated if tenants were permitted to interpose every defense usual or permissible in ordinary actions at law. For a collection of cases see 36 C. J., Landlord and Tenant, p. 647, § 1850.

■■ If a further reason were needed to justify us in sustaining the judgment of the circuit court it could readily be found in the fact that the lease of July 1, 1929, contains no provision that the $900.00 which the defendant seeks to recover was deposited as security for the payment of rent. It will be recalled that the defendant seeks judgment for the $900.00 by way of counterclaim. This portion of the answer was not attacked either by motion or demurrer. We notice, however, that in the absence of statute so permitting it is generally held that in a summary action of this character a set-off or counterclaim cannot be interposed whether the asserted claim arises from a breach of covenant by the landlord or otherwise: Tiffany, Landlord and Tenant, p. 1766; 36 C. J., Landlord and Tenant, p. 648, § 1852. But, since the plaintiff has not contested the right of the defendant to plead the counterclaim, we shall proceed. It will be recalled that the answer alleges that the defendant "is holding the premises * * * under a lease dated July 1, 1929, * * * and by the terms of said lease, advanced the sum of $900.00 to cover any delinquencies * * *." However, the lease contains no such provision although it does bind the defendant to pay the plaintiff the sum of $900.00 in the event fire should destroy the premises

prior to March 1, 1933, and also pay the plaintiff the sum of $900.00 in the event the plaintiff should sell the structure or demolish it. The lease of April 13, 1927, recites a receipt by the landlord of the sum of $900.00 as consideration for the execution of that instrument and contains a provision requiring the landlord to pay to the defendant the sum of $900.00 in the event that the building should be destroyed by fire. As we have already stated, the rents which the defendant agreed to pay under the terms of that lease became in arrears and July 1, 1929, the parties executed a new lease which "cancelled and held for naught" the former leases "the same being of no further force or effect whatsoever." Defendant's pleadings do not pray for a reformation of the lease of July 1 so as to insert into it the stipulations which he needs to support his asserted claim, nor is there any testimony whatever in the record indicating that the lease of July 1 fails faithfully to recite all of the agreements of the parties. The defendant did not testify that he was unacquainted with the provisions of that instrument when he executed it. Under well-established principles of law it is manifest that we are bound by the stipulations contained in the lease of July 1 and, since it contains no indication whatever that any sum has been deposited as a guarantee for unpaid rent, we must conclude that no such sum is now available for return to the defendant. In considering this contention of the defendant and expressing ourselves upon it, we certainly do not mean to indicate that a tenant who is in default can recover a deposited sum.

■■ Moreover, the lease of April 13 recites that the sum of $900.00 is a part of the consideration for the execution of that instrument. Since the parties desig-

nated the $900.00 paid by the tenant to the landlord as "consideration", and since it can reasonably be deemed as such, we know of no reason for regarding it as something else. Money paid as consideration upon the execution of an instrument of this character becomes the property of the landlord and is not regarded as a deposit: *Dutton v. Christie,* 63 Wash. 372 (115 P. 856), and *Ramish v. Workman,* 33 Cal. App. 19 (164 P. 26). It is thus manifest that no provision of the antecedent lease would authorize us to order return of the aforementioned sum.

It follows from the foregoing that the judgment of the circuit court must be affirmed.

BROWN, BELT and CAMPBELL, JJ., concur.

BEAN, C. J., and RAND, J., dissent.

KELLY, J., absent.