[Civ. No. 12849.   Second Dist., Div. Two.   Mar. 27, 1942.]

ELSIE KUHLEMEIER et al., Respondents, v. F. S. LACK, Appellant.

John L. Schaefer and Stephen Monteleone for Appellant.

Conroy & Conroy, Edward L. Conroy, Chambers & Lyman and Robert G. Chambers for Respondents.

STEPHENS (Jess E.), J. pro tem.—Appeal from a judgment in favor of plaintiffs for the return of a deposit made by plaintiffs' predecessor, as lessee, "to guarantee the full and faithful performance of each and every term and condition herein contained incumbent upon the lessee." Lessee died shortly after taking possession under the lease and plaintiffs succeeded to his interest. Defendant is the lessor in this lease.

The property covered by the ten-year lease consists of a large apartment house with its furnishings, the minimum rental varying from $2,000 to $3,000 per month, with provision in the lease for division between lessor and lessee of the excess revenue above certain minimums. By paragraph 26 of the lease it is provided that the deposit of $25,000 made by lessee is applied upon the payment of rental in the following manner:

| | | |
|---|---|---:|
| (a) | from Nov. 15, 1936, to Nov. 15, 1937, at the rate of $400.00................$ | 4,800.00 |
| (b) | from Nov. 15, 1937, to Dec. 14, 1937, at the rate of $200 per month.................. | 200.00 |
| (c) | from Dec. 15, 1944, to August 14, 1946, (the date of the termination of the lease) at the rate of $1,000 per month............. | 20,000.00 |
| | | $25,000.00 |

$5,000 of the deposit was theretofore applied to the months indicated in items (a) and (b) above. No question as to the application of such sum is involved on this appeal.

The controversy before this court involves the effect of section 10 of the lease, which reads as follows:

"10. Lessee may at any time during the term of this lease, at his election, terminate this lease by giving thirty (30) days' notice in writing to Lessor of his intention to so terminate, and such termination shall be effective upon payment by Lessee of all rental due up to the effective date of said termination. Upon the expiration of said thirty-day period, Lessee shall deliver possession of said premises to the Lessor and shall thereupon be relieved of all further duties, liabilities and obligations under said lease. Upon such termination as aforesaid, Lessee shall forfeit any right, title or interest he may have in and to the deposit of $25,000 paid as aforesaid."

Some time after respondents had succeeded to the lessee's

interest they gave notice to appellant of the termination of the lease, in the following language:

"Notice of Intention to Terminate Lease.

To F. S. Lack, Los Angeles, California:

"You are hereby notified that the undersigned Lessees of that certain lease dated August 14, 1936, between F. S. Lack, as lessor, and W. H. Kuhlemeier, as lessee, and which lease by proper conveyances is now the property of the undersigned as lessees, and which lease covers the Hotel Apartment House located at No. 945 Wilshire Boulevard, Los Angeles, hereby elect to and by this Notice do terminate said lease as of the 31st day of January, 1939.

"That said lease is terminated under the provisions of paragraph No. 10, page 6, and paragraph No. 26, page 11, of said lease, and for the further reason that the Lessor failed and refused to perform that part of the lease designated as paragraph 8, page 5, relative to the furnishing of the ballroom, billiard room and penthouse of said building, on or before October 1, 1936, or at all.

"You are further notified that the lessees will at the close of the 31st day of January, 1939, deliver possession of the premises described in said lease to the Lessor or his agent.

"You are further notified that under the terms and provisions of said lease and especially under the provisions of paragraph 26, page 11, of said lease, the undersigned Lessees hereby demand payment to them of the sum of Twenty Thousand Dollars ($20,000) on or before February 1, 1939.

"Dated this 30 day of December, 1938."

To this notice appellant sent the following reply:

"Mrs. Elsie Kuhlemeier,

"Mr. William Kuhlemeier, Jr.,

"Mrs. Wanda Anslyn,

"Mr. J. E. Kuhlemeier,

"Conroy & Conroy, Attorneys at Law:

"You and each of you are hereby notified that, through your attorneys, Conroy and Conroy, the undersigned has been advised by his attorney, that following a reply from the undersigned to your written notice of intention to terminate the lease on the Rex Arms Apartment building, that it is your intention to terminate said lease, and that as an evidence of such termination, you are now in process of taking inventory of all of the furniture, furnishings and equipment now located in said Rex Arms Apartment building.

"The undersigned hereby recognizes your right to terminate said Rex Arms lease, but only by virtue of and pursuant to the terms and conditions of said lease.

"The undersigned hereby denies that you have any right at all to terminate said lease for your alleged reason that the undersigned lessor failed and refused to perform that part of the lease designated as Paragraph 8, page 5, of said lease.

"The undersigned hereby further notifies you and each of you that he does not recognize any right alleged by you, whether referred to by you in said lease or not, to the return to you of Twenty Thousand Dollars ($20,000) or any sum at all, as alleged in your notice of intention to terminate said lease, or for any reason, right, or claim whatsoever, and on the contrary, hereby notifies you that pursuant to Paragraph 10 of said Rex Arms lease, upon the final termination of said lease by you, pursuant to your notice of intention to terminate said lease, you and each of you shall and will thereupon forfeit all of your right, title and interest in and to said Twenty-Five Thousand Dollars ($25,000) and/or Twenty Thousand Dollars ($20,000) or any and all sums referred to therein, to the undersigned.

"Upon the aforesaid termination of said lease, followed by the re-possession of said premises by the undersigned, the undersigned demands that you and each of you perform all and sundry the requirements of you as contained in Paragraph 14 of said lease, and return all furniture and fixtures as contained in Exhibit 'A' in good condition of repair, less ordinary wear and tear, as provided in Paragraph 14 of said lease, and failing to do so, to pay to the undersigned the reasonable value thereof, and to account and pay to the undersigned for all rentals due the undersigned.

"You and each of you will please govern yourselves accordingly.

"F. S. Lack,
"The Undersigned."

Thereafter possession was surrendered to appellant on February 1, 1939, and he has been in possession ever since. All rent up to that time was paid, and certain minor adjustments concerning articles of personal property were made.

The complaint contained a second cause of action based upon alleged failure of lessor to comply with requirements of the lease in connection with the furnishing of the ballroom, billiard room and penthouse, but the trial court found against

plaintiffs on this cause of action and it is not involved in this appeal. The trial court also found against the contention that there was any violation of this provision which could be made the basis for termination of the lease, and this finding is amply supported by the evidence.

The real question for determination here, therefore, is whether or not the provision of section 10 of the lease, that "upon such termination as aforesaid, lessee shall forfeit any right, title or interest he may have in and to the deposit of $25,000 paid as aforesaid," constitutes a penalty or forfeiture and should be held void under the provisions of Civil Code sections 1670 and 1671.

Appellant contends that he became entitled to the deposit, not by reason of any damage or as a penalty for any breach of lessees' obligations, but as a consideration for a privilege granted to lessees which they could exercise or not at their option. He points out also that although the deposit is made as a guarantee of faithful performance by lessees, there is no provision for forfeiture in case of breach, and contends that the use of the word "forfeit" in provision 10 of the lease is in fact a misnomer, because it does not contemplate a penalty for a breach. On the other hand, respondents take the position that if the effect of the provision is to penalize the lessees for not going through with the lease, and to forfeit their rights to a large sum of money for a reason and upon a basis having no relation whatever to the damage, if any, suffered by lessor through termination of the lease, then it is void, regardless of the particular words used or the ostensible basis for it. The trial court interpreted the provision as amounting in effect to a penalty, and declared it to be void.

There can be no serious doubt about the meaning of section 10 of the lease, for the language used is plain and unambiguous. The lessee is given the right to cancel the lease at any time upon thirty days' notice, and in that event he loses any right he may have to the $25,000 deposit, or so much thereof as had not, at the time of cancellation, been applied to rental in accordance with other provisions of the lease. Must this provision, then, deliberately agreed upon and clearly expressed by the parties, be declared void?

Section 1670 of the Civil Code provides that "Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section." It is appar-

ent that this is not a contract by which the parties attempted to determine the amount of liquidated damages in the event of a breach. The so-called forfeiture provision came into operation solely as a result of the lessee's voluntary action in exercising the option to terminate the lease. Since the option was exercised in accordance with the terms of the contract, it cannot be considered as a breach of the contract.

The cases of *Green* v. *Frahm*, 176 Cal. 259 [168 Pac. 114]; *Webster* v. *Garrette*, 10 Cal. App. (2d) 610 [52 Pac. (2d) 550]; *Redmon* v. *Graham*, 211 Cal. 491 [295 Pac. 1031], and *Bacciocco* v. *Curtis*, 12 Cal. (2d) 109 [82 Pac. (2d) 385], relied upon by respondents, do not aid them, for in each of those cases the court had before it a lease which provided in effect that the forfeiture was conditioned upon the lessee's breach of the lease and was therefore held to be void under section 1670 of the Civil Code because it constituted an attempt to fix liquidated damages in anticipation of a breach.

In construing any part of the lease the entire document should, of course, be considered. It should be noted that although in the preliminary recitals the deposit is said "to guarantee the full and faithful performance of each and every term and condition herein contained incumbent upon the lessee," there is nowhere any provision for forfeiture of the deposit in the event of any breach by lessee. This is a valid provision for the protection of the lessor. (*Green* v. *Frahm, supra; A-1 Garage* v. *Lange Inv. Co.*, 6 Cal. App. (2d) 593, 596 [44 Pac. (2d) 681].)

It is also provided that the deposit *is* (not shall be) applied to the rental for certain months, principally those at the end of the term; in other words, application of the deposit to rental is made at the time of execution of the lease. It has been held that "where rent is paid in advance the law itself, in the absence of any agreement therefor, authorizes the landlord to retain the rent so paid though he re-enter before the expiration of the term." (*Wetzler* v. *Patterson*, 73 Cal. App. 527, 535 [238 Pac. 1077].) How, then, can it be said that an agreement of the parties themselves is invalid when it provides for the same thing in consideration for a right which the lessee is free to exercise if he deems it to his interest to do so? It is the duty of the court to sustain contracts "when deliberately entered into between parties who have equality of opportunity for understanding and insisting upon their rights," and when such contracts are not clearly in violation

of law or against public policy. (*Burns Trading Co.* v. *Welborn,* 81 Fed. (2d) 691 [106 A. L. R. 285].) A provision in a lease for payment of a lump sum by lessee as a bonus for entering into a lease (and later to be applied to rental if lessee has observed his obligations) has been held not to be in violation of section 1670 of the Civil Code. (*A-1 Garage* v. *Lange Inv. Co., supra; Parigian* v. *Citizens Nat. Trust & Sav. Bank,* 42 Cal. App. (2d) 773 [110 Pac. (2d) 117].) If such a payment can be upheld as a consideration for entering into a lease, it would appear equally logical to sustain it as consideration for the right to terminate the lease.

The fact that the parties have used the word "forfeit" in the lease is not determinative of their interest. In law the word "forfeit" means "to lose and surrender to an individual or the state something that belongs to one *for misconduct or breach of duty* . . . The term implies that there must be some person, natural or artificial, who is entitled to receive the benefit of the forfeiture when it accrues, *and a breach of duty on the part of the one losing his interest in the property.*" (Emphasis added.) (12 Cal. Jur. 632, and cases there cited.) The lessee in the case under review was not to lose or forfeit his right to the money because of any misconduct or breach of duty, but was to surrender the money as consideration for the right to terminate the lease. There is no legal principle which makes void a provision in a lease to the effect that in consideration of the lessor's granting to the lessee the right to terminate a lease for a term of years the lessee agrees to pay a stipulated sum in the event that he elects to exercise the option to terminate. The fact that in the present case the lessee has agreed to relinquish or "forfeit" a right to a sum of money, instead of to pay a sum of money, does not alter the situation. In either event the payment of money, or the relinquishment of the right to demand the return of money, constitutes the consideration for the option to terminate the lease.

The trial court found that "the lease was mutually terminated," but there was no evidence to sustain such a finding other than the correspondence hereinabove quoted. Such finding is not sustained by the evidence. The finding should have been that such lease was terminated pursuant to the provision thereof for such termination.

The judgment is reversed.

Wood (W. J.), J., concurred.

MOORE, P. J., Concurring.—I concur. I do so with deep anxiety in view of the precise allocation of the money to the payment of the rentals for specified months of the term of the lease. Since those months had not arrived, the moneys were never earned. My hesitancy arises from a deep-seated dislike for any scheme that transfers to a person the property of his neighbor without adequate return. Defendant has the same property he had on the day he leased it to plaintiffs' predecessor, but at the same time he has also $20,000 of plaintiffs' money.

But to hold that the retention of the $20,000 by defendant would be a forfeiture were tantamount to saying that we have a contract utterly without mutuality. In view of such dilemma as would thereby be created I am persuaded that Mr. Justice Stephens has wisely solved the problem presented. If the balance remaining in defendant's hands at the time of the cancellation was not intended to constitute payment for the privilege of being discharged from further obligations under the lease, then plaintiffs had the right to determine at any time during the ten-year term whether they would stay in or go out without having to pay one penny for the privilege. It is an essential of a valid contract that the obligation of one party should be supported by an adequate consideration on the part of the other. Reading the lease by its four corners, it appears that a genuine attempt was made to provide for the compensation of the lessor in the event the lessee should desire to withdraw from his engagement to operate the property during the ten-year term.

Courts should, only after the exercise of due caution, approve the transfer of the title to moneys without the passing of adequate consideration therefor. It was for a long time the disposition of courts to look upon such a provision as that under consideration with disfavor and to construe it strictly in order that damages provided to be paid in the event of a breach might be treated as penalties. By such holding it was rendered difficult to recover except for only such loss as could be definitely proved. But the modern tendency is, when a contract has been deliberately conceived and executed by two mature parties with equal understanding of their respective rights, to regard such provisions as inserted for the purpose of promoting prompt performance of the contract as well as to adjust amicably in advance the settlement of a potential controversy without uncertainty, delay and expense. To this

end courts now industriously seek to ascertain the true intention of the parties at the time of making provision for the payment of a designated sum upon the breach of a covenant, rather than merely to conclude that it is a penalty because of the failure of the parties to include a stipulation that it would be extremely difficult to determine the amount of damage to be suffered in the event of a breach. (*Wise* v. *United States,* 249 U. S. 361 [39 S. Ct. 303, 63 L. R. A. 647].)

A petition for a rehearing was denied April 8, 1942, and respondents' petition for a hearing by the Supreme Court was denied May 25, 1942. Carter, J., and Traynor, J., voted for a hearing.