**228 P.2d 248**

**BROOKS et al. v. COPPEDGE.**

**No. 7677.**

Supreme Court of Idaho.

Feb. 19, 1951.

Caldwell & Alexanderson, and Wayne E. Davis, all of Caldwell, for appellants.

Gigray & Boyd, Caldwell, for respondent.

GIVENS, Chief Justice.

May 7, 1949, appellants by written lease rented to respondents W. B. Coppedge and G. A. Newell, partners, a certain designated garage building in Caldwell:

" * * * for the term beginning the 10th day of May, 1949, and ending on the 9th day of May, 1954, for the sum and at the rental payment in the amount and in the manner as hereinafter set forth, to-wit:

"(1) The sum of Twenty Thousand One Hundred Dollars ($20,100.00) lawful money of the United States of America, payable as follows, to-wit: Two Thousand Three Hundred Forty-five Dollars ($2,345.-00) paid prior to the execution of this agreement, the receipt of which is hereby acknowledged, said sum of Two Thousand Three Hundred Forty-five Dollars ($2,345.-00) being the monthly rental payment for the first month and the last six (6) months of this lease.

"(2) The balance of said rental, to-wit: the sum of Seventeen Thousand Seven Hundred Fifty-five Dollars ($17,755.00) payable in monthly installments of $335.00 in advance on the 10th day of June, 1949, and $335.00 in advance on the 10th day of each and every month thereafter until the full amount of said rental has been paid." with the option to purchase the property for $36,000.00, less 3% depreciation on the building, then valued at $21,000.00, and if exercised:

" * * * all advanced rental payments theretofore made, shall be applied to and become a part of the purchase price agreed to be paid."

That if the building be so damaged by fire that it be necessary to erect a new building, the lease should be cancelled from the date of such loss, and there be no further liability to pay rental and the lessors "will refund any advance rentals paid." If the building should be only damaged, payment of the rent would cease until business in the building could be resumed by the lessees.

The partnership paid the $2,345.00, being $2010.00 for the last six-months period and $335.00 for the first month, i. e., the period from May 10 to June 10, 1949, prior to the signing of the lease, and entered into possession. Thereafter, the partnership dissolved and assigned all interests thereof in the building and the lease to respondent Coppedge. Respondent paid no rent after December 10, 1949.

January 9, 1950, appellants filed a complaint in unlawful detainer setting forth the lease and alleging default in the payment of rent as due December 10, 1949 for the period from that date to January 10, 1950 and of rent due January 10, 1950 for

the period to February 10, 1950; that December 27, 1949 demand in writing was duly made by appellants on respondent requiring the rent then due, amounting to $335.00, be paid or possession of the property be given, and that respondent neglected and refused for the space of three days and upward, and still neglects and refuses to so pay. The prayer was for restitution and possession of the property, $670.00 rent for January and February trebled, and costs.

The amended answer admitted the lease and service of notice, but asserted: "* * * that it was the intention of the parties herein that should there be a default in the payment of rent, the deposit of $2,010.00 held by the plaintiffs as security could be and would be used by the lessors for payment of rent which may be found due and owing." and that plaintiffs had in their possession said $2010.00 and prayed only that appellants be required to satisfy their claim for unpaid rent out of said deposit and for a set-off for enhancing the value of the premises.

Respondent, parenthetically, sought to excuse and justify his nonpayment of rent on the ground he had sold the business with his rights under the lease to another party and unsuccessfully sought to have such party brought into the suit as a party defendant. Respondent did not plead or seek reformation of the lease or substitution of parties or assert or allege that appellants had accepted any substitution.

The findings placing responsibility for the payment of rent upon respondent and lack of any findings or conclusions on substitution, and no point being made on the appeal in connection therewith, and there being no cross-appeal, render it unnecessary for us to consider such feature. Likewise, the Court made no finding as to respondent's claim of damages and we need not further consider that, except to state we are cognizant of the strict limitations on defenses which may be interposed in an unlawful detainer suit.

Upon proper application by appellants, attachment issued February 28, 1950 and was levied March first by the Sheriff of Canyon County on various real property standing in the name of respondent Coppedge and his wife, and on the personal property assertedly belonging to respondent in the leased premises used in connection with the carrying on of the garage business; appointed as keeper thereof August M. Barrie, respondent's employee at least up until November 19, 1949. No challenge of the attachment was interposed, except at the trial upon the merits, and then not because attachment would not lie: "There is no doubt and it is not questioned that the lessors had the right to seize by legal process the personal property to secure the payment of rent. However, when the Sheriff locked the premises he in fact evicted the lessees from the premises." only that no rent was unpaid because of the deposit, hereafter elucidated.

The Trial Court found the deposit of $2,345.00 was—"* * * to secure the payment of rent for the first month's rent and last six month's rent of the leased premises." that respondent neglected to pay the agreed rental for the month ending December 10, 1949: "That there is due plaintiffs from the defendant as rent for the period from the 10th day of December, 1949 to the 28th day of February, 1950 the sum of $1,004.15, and that this * * * shall be paid out of the money now held by the plaintiffs, and the balance of said money * * * $1,005.85, be returned to the defendant." that respondent had installed certain machinery in the building which he could remove and ordered return of the premises to appellants.

Conclusions of law were that the lease and option to purchase be forfeited and cancelled December 22, 1949; that the rent due December 10, 1949 to February 28, 1950 on said premises, untrebled, cease on February 28, 1950 and that such rent be paid in accordance with the above finding; i. e., out of the $2010.00; that respondent could remove the personal property in the building; that the attachment be dissolved; and respondent be allowed costs, and entered judgment accordingly June 6, 1950.

The consolidated assignments of error are: first, that the rent found to be due should extend to the date of the judgment and not be taken out of the deposit of $2010.00 specified in the lease as payment of the last six months' rent; second, it was error to dissolve the attachment; third, the personal property should not be returned to respondent; fourth, appellants were entitled to treble rent; and fifth, their costs.

Respondent, in effect, so joined issue with appellants, but in addition thereto urges attaching the personal property and asserted locking of the premises in connection therewith, constituted an eviction and surrender of the lease by appellants, and that respondent is liable for rent only to February 28, 1950.

■ Under Section 6–316 I.C., where breach of a lease is because of failure to pay rent, the landlord is entitled to three things: restitution of the premises, rent then due and unpaid, and any damages alleged and proven, in addition to the rent found due, both of which may be trebled.

"The statute prescribes that a tenant is guilty of unlawful detainer after default in the payment of rent pursuant to the lease or agreement under which the property is held, and three days' notice in writing requiring its payment, or possession of the property, shall have been served upon him (Laws 1891, p. 180); and, when these facts are made to appear to the satisfaction of the court or jury upon the trial, the landlord is entitled to judgment for restitution of the premises, and also to judgment declaring the forfeiture of such lease or agreement, together with damages and the rent found due." Hunter v. Porter, 10 Idaho 72 at 82, 77 P. 434, 437.

Said Section further provides that if the tenant's default is because of failure to pay rent—" * * * and the lease or agreement under which the rent is payable has not by its terms expired, execution upon the judgment shall not be issued until the expiration of five days after the entry of the judgment, within which time the tenant, * * * may pay into court, * * *, the amount found due as rent, with interest thereon, and the amount of the damages found by the jury or the court for the unlawful detainer, and the costs of the proceeding, and thereupon the judgment shall be satisfied and the tenant be restored to his estate; (i. e., possession) but if payment as here provided be not made within the five days, the judgment may be enforced for its full amount, * * *."

When the lessee is in default in the payment of rent and unlawful detainer be brought, the lease is not terminated or ended until after the five days above referred to and the action is not to rescind the lease. Its terms persist and govern and control in determining the rights of the parties as to rent due and unpaid or paid in advance.

"In such a proceeding as this (unlawful detainer) it is not contended that the lease is terminated, and it is not upon that theory that such an action, founded upon failure to pay rent, is prosecuted. Here the landlord seeks primarily to secure payment of the rent due, and, as an alternative, in case the rent is not paid, to secure possession of the premises." Hunter v. Porter, supra, 10 Idaho at page 79, 77 P. at page 436.

Respondent thus recognizes the essential issue in this case: "The question of the landlord's right to retain the $2,010.00 hinges on whether at the time the deposit was made it was considered by the parties to be additional consideration for the five year lease, a deposit to secure the performance of the covenants and conditions, or an actual advance payment of rent. It is admitted that if this money was consideration given the lessor for the lease, then the lessee has lost all interest in it. It is admitted that if this money were to be used solely to pay the rent for the last months of the term, and in no eventuality to be returned to the lessee, the money then belongs to the lessor." This statement is incorrect in stating the determination rests upon what the parties considered. The determination rests on what the written lease provided.

Respondent attempted to show dehors the lease (without pleading mistake or seeking reformation) that it was the intention of the parties the payments were as security. This would have changed the written lease by parol and is not permissible. The written lease controls and any previous negotiations or understandings not contained in the written lease may not be shown. Hurt v. Monumental Mercury Min. Co., 35 Idaho 295, 206 P. 184; First Nat. Bank v. Cruickshank, 38 Idaho 789, 225 P. 142; Davis v. Idaho Minerals

Co., 40 Idaho 64, 231 P. 712; Milner v. Earl Fruit Co., 40 Idaho 339, 232 P. 581; Larsen v. Buys, 49 Idaho 615, 292 P. 239.

 The only provisions for repayment were, if option to purchase were exercised, and a totally destroying fire. Neither of these events occurred, so respondent has no claim to the advance rent. Wood v. Hipwell, 107 Cal.App. 680, 290 P. 1040, sustains this postulate and is better reasoned than Thompson v. Swiryn, 95 Cal. App.2d 619, 213 P.2d 740, as is hereafter conclusively demonstrated by the cases considered. Therefore, upon respondent's default, the lease left the advance payment of rent with the lessors, and no words or implication exist in the lease stating or indicating it was for security or to guarantee anything. It was nothing but payment of rent in advance.

As repeatedly stated in the authorities cited herein, the lessee, not the lessors, prevented the lessee having use of the building the last six months.

While the lease could have provided refund or repayment upon the contingency the lessee defaulted, it did not do so—hence, it would be inconsistent and contradictory to construe the lease as containing such additional contingency and to hold without such provision the advance payment was not what the lease said, payment in advance of rent, but a guaranty. If a guaranty, and used up for interim defaults as respondent contends it could and should have been, then no part of it

would remain available for the express purpose; namely, payment for the last six-months period. True, this time with occupancy by the lessee never arrived, but that was his fault, not the lessors'. This point is elaborately and decisively pointed out in the overwhelming weight of the following authorities.

Respondent relies upon Green v. Frahm, 176 Cal. 259, 168 P. 114, and Rez v. Summers, 34 Cal.App. 527, 168 P. 156. These cases have been completely and exhaustively analyzed in Curtis v. Arnold, 43 Cal.App. 97, 184 P. 510, 513, and thereby their complete inapplicability herein demonstrated because the lease-agreement herein did not provide this advance payment was as security or guaranty for the payment of any interim unpaid rent expressly, impliedly or in connection with the rent being applied to the option to purchase, if exercised, or that rent cease in case the property was totally destroyed by fire. The above case, quoting with approval from 16 R.C.L. 931, thus announced the law applicable to this phase of the case:

" 'Provision is sometimes made in a lease for the payment in advance of the rents of the last or later periods of the lease, and such a provision has been held not to be a security merely for the lessee's performance of his agreements in the lease, but purely a payment of rent in advance, and therefore may be retained by the lessor though he terminates the lease for the default of the lessee as provided for in the lease' ".

A subsequent California case, McArthur v. Kluck, 75 Cal.App. 785, 243 P. 453, in unlawful detainer on all fours with the case herein, completely covers the situation herein and justifies its quotation at length:

"Defendants' claim is in effect: Where, at the time of the execution of a written lease, the tenant pays to the lessor a certain sum, which is stated in the lease to be in full payment of the rent for the last five months of the term, and thereafter, upon the tenant's failure to pay rent accruing, the lessor serves a three days' notice, demanding the payment of the rent due or the surrender of the premises, and the tenant thereupon surrenders the premises, and the lessor takes possession thereof, the tenant may recover the advance rent so paid covering the last five months of the term.

"The trial court decided against the defendants and appellants upon this proposition, and such determination is supported by the case of Curtis v. Arnold, 43 Cal.App. 97, 184 P. 510, in which it is said:

"'From the facts of the present case, and our review of the foregoing authorities, we reach the conclusion that plaintiff in this action is not entitled to recover any portion of the fund of three thousand dollars paid at the time of the execution of the lease. If the money be regarded as given in consideration of the covenants of the lease when paid, the title thereto passed to the lessor (Ramish v. Workman, supra [33 Cal.App. 19, 164 P. 26]; Dutton v. Christie, supra [63 Wash. 372, 115 P. 856]); if it is to be regarded merely as an advance payment of rent, the lessor is entitled to retain it (Galbraith v. Wood, supra [124 Minn. 210, 144 N.W. 945, 50 L.R.A.,N.S., 1034, Ann.Cas.1915B, 609]. See, also, citations under this case, found in 50 L.R.A.,N.S., 1034; Ann.Cas.1915B, 609, 613).'

"In the case of Harvey v. Weisbaum, 159 Cal. 265, 267, 113 P. 656, 657 (33 L.R.A., N.S., 540, Ann.Cas.1912B, 1115), it was said:

"'The fact that rent was to be paid in advance might have been the controlling factor in the mind of the lessor when he executed the lease and delivered the possession of the premises to the lessee. The consideration for the advance payment is not only the use of the premises for the month during which the lessee is to use them under the lease, but the conveyance by way of lease and the obtaining possession of the premises. The lease is an interest in real property passing from the lessor to the lessee. In many cases the landlord may have expended more money than the advanced rent, and for the very reason that he is receiving rent in advance. It may have been the very inducement to the lease.'"

The reasons and justifications for this holding have been exhaustively considered and announced in the following authorities and too lengthy quotations therefrom would unduly and unnecessarily extend this opin-

ion. It suffices to notice that the early case of Galbraith v. Wood, 124 Minn. 210, 144 N.W. 945, 949, 50 L.R.A.,N.S., 1034, thus concluded its consideration of all the points raised by respondent or in his behalf: "We hold that the $20,000 payment was made as an advance payment on the rent for the third, fourth, and fifth years of the term; that it was the default of the tenant that prevented his right to have the payment so applied; and that neither he nor plaintiff, who of course stands in his shoes, can recover back the payment so made." 50 L.R.A. 1040.

While in the case of Dutton v. Christie, 63 Wash. 372, 115 P. 856, another early lode star case, the lease provided not only that the payment was for the last two months' rent, "but otherwise said payment this day made shall belong to the first parties as a part of the consideration to them for the execution of this lease * * *." The court nevertheless held the lessor was, regardless of such provision, entitled to retain such advance payment:

"The money was not deposited as a security. There was merely a stipulation that it should be applied in payment of rent upon a condition which has never been performed; upon a contingency which has never arisen and now cannot arise by reason of the appellants' voluntary abandonment of the leased premises. This case is thus clearly distinguished from the New York cases mainly relied upon by the appellants. Chaude v. Shepard, 122 N.Y. 397, 25 N.E. 358, and Caesar v. Rubinson, 174 N.Y. 492, 67 N.E. 58. In each of those cases the tenant was required by the terms of the lease to deposit a specified sum 'as security for the faithful performance' of his covenants in the lease. In the first of these cases the lease expressly specified that the deposit should be 'forfeited' in case of nonperformance by the lessee. In the other the lease provided that the deposit should be retained by the lessor as 'liquidated damages' in case of a breach. There is a manifest difference between a deposit for security and a stipulation for reduction of consideration upon a contingency.

"When the appellants paid this money as a consideration for the lease, the title to it passed to the respondent. Their breach of the lease cannot divest his title." 115 P. at page 857.

And the authorities uniformly hold that such advance payments are to be retained by the lessor upon breach by the lessee, unless the lease expressly provides to the contrary. Pigg v. Kelley, 92 Cal.App. 329, 268 P. 463. The other authorities cited herein hold the payment having been made to the lessor, absent any provision in the lease it is to be returned to the lessee upon his failure to pay rent or other breach, the lessor is entitled to retain it. L. B. Menefee Lumber Co. v. Abrams, 138 Or. 263, 5 P.2d 709; Evans v. McClure, 108 Ark 531, 158 S.W. 487.

As noted in Schoen v. New Britain Trust Co., 111 Conn. 466, 150 A. 696, supporting the above rule, apparently Kansas is the only state holding to the contrary.

At first blush it might seem Bacciocco v. Curtis, 12 Cal.2d 109, 82 P.2d 385, supports respondent, but the analysis and application of the controlling principle therein announced has been construed as supporting appellants, Kuhlemeier v. Lack, 50 Cal.App.2d 802, 123 P.2d 918, and the concurring opinion disposes of any contention of lack of consideration. Furthermore, Bacciocco v. Curtis, supra, does not support respondent because therein the receipt for the advance payment stated it was for security and interest was paid on it. Not so herein.

The provision for return in case of total destruction by fire is not evidence of security for two reasons; one, as indicated elsewhere, such was an independent covenant and the event never occurred; second, it of itself (i. e., the provision) did not indicate it was a guaranty:

"If a further reason were needed to justify us in sustaining the judgment of the circuit court, it could readily be found in the fact that the lease of July 1, 1929, contains no provision that the $900 which the defendant seeks to recover was deposited as security for the payment of rent. It will be recalled that the defendant seeks judgment for the $900 by way of counterclaim. This portion of the answer was not attacked either by motion or demurrer. We notice, however, that in the absence of statute so permitting, it is generally held that in a summary action of this character a set-off or counterclaim cannot be interposed whether the asserted claim arises from a breach of covenant by the landlord or otherwise. Tiffany, Landlord and Tenant, p. 1766; 36 C.J., Landlord and Tenant, p. 648, § 1852. But since the plaintiff has not contested the right of the defendant to plead the counterclaim, we shall proceed. It will be recalled that the answer alleges that the defendant 'is holding the premises * * * under a lease dated July 1, 1929, * * * and by the terms of said lease, advanced the sum of $900.00 to cover any delinquencies. * * *' However, the lease contains no such provision, although it does bind the defendant to pay the plaintiff the sum of $900 in the event fire should destroy the premises prior to March 1, 1933, and also to pay the plaintiff the sum of $900 in the event the plaintiff should sell the structure or demolish it. The lease of April 13, 1927, recites a receipt by the landlord of the sum of $900 as consideration for the execution of that instrument and contains a provision requiring the landlord to pay to the defendant the sum of $900 in the event that the building should be destroyed by fire. As we have already stated, the rents which the defendant agreed to pay under the terms of that lease became in arrears, and July 1, 1929, the parties executed a new lease which 'cancelled and held for naught' the former leases, 'the same being of no further force or effect

whatsoever.' Defendant's pleadings do not pray for a reformation of the lease of July 1st so as to insert into it the stipulations which he needs to support his asserted claim, nor is there any testimony whatever in the record indicating that the lease of July 1st fails faithfully to recite all of the agreements of the parties. The defendant did not testify that he was unacquainted with the provisions of that instrument when he executed it. Under well-established principles of law, it is manifest that we are bound by the stipulations contained in the lease of July 1st, and, since it contains no indication whatever that any sum has been deposited as a guaranty for unpaid rent, we must conclude that no such sum is now available for return to the defendant. In considering this contention of the defendant and expressing ourselves upon it, we certainly do not mean to indicate that a tenant who is in default can recover a deposited sum.

"Moreover, the lease of April 13th recites that the sum of $900 is a part of the consideration for the execution of that instrument. Since the parties designated the $900 paid by the tenant to the landlord as 'consideration,' and since it can reasonably be deemed as such, we know of no reason for regarding it as something else. Money paid as consideration upon the execution of an instrument of this character becomes the property of the landlord and is not regarded as a deposit. Dutton v. Christie, 63 Wash. 372, 115 P. 856, and Ramish v. Workman, 33 Cal.App. 19, 164 P. 26. It is thus manifest that no provision of the antecedent lease would authorize us to order return of the aforementioned sum." L. B. Menefee Lumber Co. v. Abrams, 138 Or. 263, 5 P.2d 709 at page 712.

The lease herein stated the premises were leased 'for' the sums stated, including the $2010.00 payment of the last six months' rent. 'For' means: 'in consideration of which.' Webster's New International Dictionary, 2nd Ed., p. 984; In re Farmers' Cooperative Ass'n, 69 S.D. 191, 8 N.W.2d 557, 562; 36 C.J.S., For., P. 1132.

■ No move was made by respondent challenging the levy of the writ of attachment as excessive, though the trial court indicated by his remarks he so thought. If it were excessive, that did not justify quashing the writ. Relief should have been sought in the lower court for reduction of the amount of property attached. Foore v. Simon Piano Co., 18 Idaho 167, 108 P. 1038.

The trial court quashed the writ and dissolved the attachment, evidently on the theory there was no default in the payment of rent, though his finding is expressly to the contrary: "That the defendant, W. B. Coppedge, neglected and failed to pay the agreed monthly rental for the month ending the 10th day of December, 1949."

■ Respondent questioned the right of attachment only on the ground there was no default in the payment of rent, which has been disposed of above, thus stating in his brief: "There is no doubt and it is not

questioned that the lessors had the right to seize by legal process the personal property to secure the payment of rent." However, he contends the action of the Sheriff in locking the premises was an eviction and a resultant surrender by appellants and abandonment of the written lease. As indicated above, Hunter v. Porter, 10 Idaho 72, 77 P. 434, the bringing of an action of unlawful detainer does not terminate the lease and since respondent concedes the lessors had the right to issue an attachment, that did not terminate the lease. The action of the Sheriff in seizing the personal property by locking the building, if wrongful—which we do not pass upon or decide—was, so far as the record shows, his act, not that of appellants. It is, therefore, unnecessary to consider whether there ·was an eviction since there was clearly no abandonment, surrender or termination of the lease by appellants.

Furthermore, respondent did not and does not seek to re-enter the premises nor make any claim of right to do so. His real resistance in the action is, therefore, bottomed solely on the source from which the unpaid rent is to be satisfied. Abandonment was by respondent in trying to transfer all liability and responsibility for payment of rent and possession to his claimed assignee.

Since appellants were entitled to judgment, as sought by them; i. e., payment of the unpaid rent up to the date of the judgment, since there was no offer to pay within the five days; and the right to retain the advance payment for the last six months' rent; they were of right entitled to their costs in the lower court, and here.

We think the record does not show the trial court erred in refusing to treble the rent. Read v. La Shonse, 45 Idaho 299, 261 P. 773; Knight v. Fox Caldwell Theatres Corp., 70 Idaho 148, 212 P.2d 1027.

The judgment, therefore, is reversed with directions to require payment of the unpaid rent up to the date of the judgment, such payment not to be taken out of the payment heretofore made by respondent for the last six months' rent; that the writ of attachment be reinstated to cover sufficient property to satisfy the judgment and costs, and appellants be awarded costs by and in the lower court, and herein.

TAYLOR, and THOMAS, JJ., and BAKER, District Judge, concur.

KEETON, Justice (dissenting in part).

I concur in the reversal of the judgment entered and that judgment should be for the plaintiff. I am further of the opinion that the plaintiff is entitled to treble damages. The lessee defaulted in payment of rent and refused to surrender possession or follow the proceedings provided by statute for reinstating the lease, which makes judgment for treble rent mandatory. Sec. 6–316 I.C. provides for treble rent "if the alleged unlawful detainer be after default in the payment of rent, and the judgment

shall be rendered against the defendant guilty of the * * * unlawful detainer, for three times the amount of the damages thus assessed, and of the rent found due."

By other provisions in the section, the lessee may within five days pay the rent and relieve himself of the treble rent so determined. In the instant case, the lessee did not elect to pay the rent. The statute, Sec. 6–316 I.C., does not use the word "willful" and 32 Am.Jur. 788, par. 934, quoting authorities states the rule as follows: "The view has been taken that under a statute imposing multiple damages on a tenant who wrongfully holds over, which does not employ the word "wilful", the landlord may recover even though it is found that the tenant held over because he believed, in good faith, that he had a lawful right to do so." See also Lane v. Ruhl, 103 Mich. 38, 61 N.W. 347.

In the instant case, the lessee did not pay the rent pursuant to the notice served, nor did he surrender possession of the property, nor is it shown that he intended to comply with the lease terms then or thereafter. The rights of the lessor and lessee under such circumstances are covered by statute.

Cases based on statutes using the word "willful" are not authority in the construction of the Idaho. Statute. I think the lessor is entitled to treble rent. Otherwise, I concur in the majority opinion.