310 P.2d 825

Edmund LOEW, Appellant,
v.
George S. ANTONICK and Kate Z. Antonick, his wife, Appellees.
No. 6052.

Supreme Court of Arizona.
April 30, 1956.

Udall & Udall and Paul G. Rees, Jr., and Ackerman & Ares, Tucson, for appellant.

Silver, Silver & Ettinger, Tucson, for appellees.

HENRY C. KELLY, Superior Court Judge.

The action was begun by appellant, as plaintiff, to recover payments made by his predecessor in interest, as lessee, to appellees as lessors, for the rent of the last five months of a five-year term, the tenant having defaulted in the payment of current rent near midway of the term and the possession having been retaken by the landlord. The claim is that these payments have unjustly enriched the landlord, that it is inequitable that he should retain them, and that the tenancy being terminated they should be returned to the lessee. The plaintiff is not the original lessee, but it may be taken for all purposes that he stands exactly in the shoes of the original tenant.

The lease is a long one. It is not practical or necessary for it to be here set forth in full; but as the precise language used in some clauses is of critical importance in reaching a conclusion upon the question now before us they will be copied verbatim. In other respects its terms, when necessary to an understanding of the facts, will be stated generally.

After the habendum clause (from August 15, 1950 to August 31, 1955) the following clauses next appear:

"The said Lessee, in consideration of the leasing of said premises aforesaid, does hereby covenant and agree to pay the Lessor as rent for the same the sum of One Hundred Twenty Thousand Three Hundred ($120,300.00) Dollars, which sum shall be payable in the following manner, to wit:

"The sum of Twelve Thousand Three Hundred ($12,300.00) Dollars upon the execution of this lease, receipt of which is hereby acknowledged, which shall represent rent of Three Hundred ($300.00) Dollars from August 15, 1950, to August 31, 1950; the sum of Two Thousand ($2,000.00) Dollars representing rent for the month of September, 1950, and the sum of Ten Thousand ($10,000.00) Dollars representing rent from April 1, 1955, to August 31, 1955; the sum of Two Thousand ($2,000.00) Dollars on the 1st day of October, 1950, and a like sum of Two Thousand ($2,000.00) Dollars on the 1st day of each and every month thereafter until the total sum of One Hundred Twenty Thousand Three Hundred ($120,300.00) Dollars has been fully paid."

Several other promises and agreements usual to leases, some of major and some of necessarily minor importance, are set forth, as also this provision, greatly relied upon by plaintiff-appellant for lessors' relief in the event of default:

"Lessor may elect to take the following action:

(1) Retake the leased premises and declare the lease terminated and ended and all rentals paid in advance shall be forfeited as liquidated damages, and the Lessor may take proper action to recover and distrain for any rent due at the time of said termination, together with such costs and expenses and damages caused said Lessor as the result of said breach."

Another clause relied upon by appellant may be referred to as the disaster clause, and it will be set forth hereafter as written.

The lease also, it may not be unworthy to note, with no consideration stated separately from the rent paid and reserved, granted to the tenant three options which were undoubtedly valuable, and each of which placed restrictions upon lessors' rights to dispose of their property:

1. Option of renewal,

2. Option to purchase at a set price,

3. Preferential rights to purchase at whatever price and terms offered to another.

On April 1, 1954, the lessee failed to pay the monthly installment of rent due that day. On the following May 1st a similar default occurred. The lease provided for a grace period of thirty days. On May 13, 1954, the lessors entered into the possession of the leased premises and thereafter operated the property (a motor hotel) upon their own account. That possession was gained ostensibly as a result of an action of forcible entry and detainer; but the judgment in that action was by consent, the lessee desiring to surrender the possession and consenting to the issuance of a writ of restitution therefor.

Upon this state of the facts the lessee (actually his successor in interest) began the present action for the return of the prepayment of $10,000 for the rent of the last five months of the term. Except that the plaintiff uses the expression "unjust enrichment" and under it invokes alleged equity principles, which seem to have no application here, there is no extreme disagreement between counsel as to the pertinent rules themselves; the difficulty lies, as often noted in the decisions, in the application of those rules. The nub of the question is in determining the category in which the sum in dispute falls. It may be best stated by quoting from a well-considered California case many times referred to and approved in later decisions:

"There are several types of cases involving payments of this kind—not different lines of authority adopting divergent rules on the legal principle involved, but different groups of cases dependent upon the special facts.

Within these groups the rules of law are settled and our authorities are in complete harmony. First, because of more frequent occurrence, come the cases involving an absolute payment in advance of the rent for the last few months of the term. When paid under such circumstances, the lessor is entitled to retain the fund on default of the lessee. [Citing cases] Second, where the payment is made by way of a deposit as security for the performance of the covenants of the lease. Cases within this group should be again divided into two classes—where the lease provides that the sum shall be forfeited to the lessor in the event of breach by the lessee, and, where the sum is treated as a trust fund to which the lessor may look for relief upon proof of damages arising from the breach. Where a forfeiture is provided for and the deposit treated as liquidated damages, this clause has been uniformly held invalid in this state under section 1670 of the Civil Code. [Citing cases] On the other hand, where the sum is deposited merely as security for the performance of the covenants by the lessee, without a penalty or forfeiture clause, the payment is valid to that extent and the lessee is not entitled to a return of the fund upon a breach of the lease, but the lessor may look to the fund for damages proved. [Citing cases]" A–1 Garage v. Lange Inv. Co., 6 Cal.App.2d 593, 44 P.2d 681, 682.

Another group of cases refers to payments as a bonus to the lessor for the execution of the lease, and are held valid. See: Thompson v. Swiryn, 95 Cal.App.2d 619, 213 P.2d 740; Bacciocco v. Curtis, Cal., 72 P.2d 148, reversed on rehearing 12 Cal.2d 109, 82 P.2d 385; Warming v. Shapiro, Cal.App., 257 P.2d 74; Ramish v. Workman, 33 Cal.App. 19, 164 P. 26; Rockwell v. Eiler's Music House, 67 Wash. 478, 122 P. 12, 39 L.R.A.,N.S., 894; Curtis v. Arnold, 43 Cal.App. 97, 184 P. 510; Dutton v. Christie, 63 Wash. 372, 373, 115 P. 856; Galbraith v. Wood, 124 Minn. 210, 144 N.W. 945, 50 L.R.A.,N.S., 1034, Ann.Cas. 1915B, 609; Sinclair v. Burke 133 Or. 115, 287 P. 686; Schoen v. New Britain Trust Co., 111 Conn. 466, 150 A. 696; Brooks v. Coppedge, 71 Idaho 166, 228 P.2d 248, 27 A.L.R.2d 645.

■ If we consider alone the language of the lease by which the terms of payment are expressed and the integral acknowledgement of lessors' receipt of the money, the conclusion is unescapable that by that language a payment of money by way of consideration for the lease is not merely implied but it is explicitly stated. Even the complaint of the plaintiff speaks of the money prepaid upon rent as a "payment". If the lease had made no further reference

to this money it is reasonable to suppose that no litigation would have ensued for its recovery. It is, however, later referred to in the forfeiture clause already quoted, and again in the so-called disaster clause, which for precision in considering its effect it is necessary to state in its own language:

"* * * in the event the leased premises, or any substantial part thereof, shall be rendered untenantable by fire or other calamity, or be condemned by public authorities, the lessor shall within 30 days from such occurrence give written notice to the lessee as to the intention of the lessor to repair or restore said leased premises. Should the Lessor elect not to repair or restore said leased premises this lease shall be deemed to have ended upon the date of said destruction or condemnation, and the Lessor shall refund the unearned portion of the advance rent paid."

As to the problem posed by this language the question may be stated in terms as follows: Does this so-called disaster clause, with no implication beyond the mere refund of the money upon the happening of the casualty, manifest an intention that the "payment" should be metamorphosed into a "security", and so reserve to the lessee such an interest in the sum prepaid upon rent as to make of it a deposit or guarantee for performance and therefore not a payment?

The case of Wetzler v. Patterson, 73 Cal.App. 527, 238 P. 1077, hints at the possibility that this question might be answered in the affirmative. The case of Thompson v. Swiryn, 95 Cal.App.2d 619, 213 P.2d 740, upon facts and contract language distinct from those we are dealing with, in an obiter statement expresses the view that in the circumstances before the court the question should be answered affirmatively. But the case of Wood v. Hipwell, 107 Cal. App. 680, 290 P. 1040, answers this question categorically in the negative upon facts very like those here present, the opinion being upon this precise point. The answer depends upon the construction to be placed upon the language of the contract. The solution reached, according to the annotator writing at page 659 of 27 A.L.R.2d,

"* * * frequently involves close and difficult questions, with the result often dependent upon a few words, recitals not immediately connected with the rent covenants, the circumstances present, the situation of the parties, or a combination of these."

In many cases it has been held that provisions in a lease making the prepaid rent refundable upon the destruction of the premises may, with other circumstances, manifest the intent that the advance payment was in truth a deposit. An illustrative case is Bacciocco v. Curtis, Cal., 72 P.2d 148, reversed on rehearing 12 Cal.2d 109,

82 P.2d 385; the overturning of the first decision by the second brings the distinction into clear outline. Here the circumstances do not manifest that intent; for example, we have here no allowance of interest upon the money paid, we have no receipting for the money as a deposit, no reference to it as security, no provision for a future application of the money to any purpose, nor other clue or suggestive hint that the rent paid in advance was contemplated by the parties to be in the nature of security. The provision for reimbursement of the tenant for rents he has paid for time subsequent to the calamity has no relation to any possible breach by either the lessor or the lessee, and it is in truth "an independent covenant", as held in Brooks v. Coppedge, 71 Idaho 166, 228 P.2d 248, 253, 27 A.L.R.2d 645. It has relation only to the fortuitous happening of an event, and in part brings the agreement into harmony with the statute which represents a variation from the common law rule.

As practical men of business dealing with valuable rights it was no doubt considered by both the lessor and the lessee that the purpose of the prepayment was to assure that by his own investment in the lease the lessee from self-interest would be more apt to finish successfully the contract he had undertaken upon the principle, known at least from the time of the first of the gospels, that "where your treasure is, there will your heart be also".

There is yet another factor that persuasively argues that this prepayment was not intended by either of the parties to be a deposit or a guarantee, in the sense of a fund to be applicable for payment upon the lessee's possible breach, and in which the lessee still held a property right.

It will have been noted that an integral part of the lease was the granting by the lessors to the lessee of three several options, with no separation of the sum paid for them from the rent itself. It is impossible for the payments to be now apportioned or allocated to rent or to options. An option grants a right to the optionee but implies no duty to take it up. It would appear wholly illogical that the lessee should make a deposit upon the options which he might have back if he should not exercise the rights they conferred, and more particularly if such right of withdrawal should come about as a result of his breach of the terms of the lease.

"* * * No construction is open to the plaintiffs which will enable them to claim this to be security, unless there can be found in the lease the words 'deposit for security' or their equivalent, and in addition words which signify in terms or by inference for what the deposit was security. * * *" Schoen v. New Britain Trust Co., 111 Conn. 466, 150 A. 696, 699.

It being clear that the advance payment of rent was a payment, as distinguished from a deposit, and therefore not recoverable back by the tenant when by his breach the lease is terminated before the arrival of the period for which the rent is paid, it becomes necessary to consider the effect of the "forfeiture" clause set forth above. In this instance also the objective is to construe the lease in such manner as to give effect to the intent of the contracting parties as expressed in their writing.

In a case very similar to this in its facts, the court said, in Wetzler v. Patterson, 73 Cal.App. 527, 238 P. 1077, at page 1080:

" * * * We think the most reasonable conclusion to be deduced from a consideration of the lease as a whole is that in using the word 'forfeited' in the subsequent paragraph of their writing it was the purpose of the parties to 'make assurance doubly sure' by declaring what the law itself, in the absence of any provision for a forfeiture, would have declared. It is true that by putting this construction upon the word 'forfeited' we in effect deprive it of all practical efficacy. But the same result would follow if we were to adopt the only other possible interpretation of the first-mentioned covenant. That covenant means either that the $700 was intended to be an advance payment of rent or that it was intended to be a mere deposit to secure the performance of the lessee's covenants to pay the rent. There is no other possible interpretation. If the second of these alternative interpretations should be adopted, then the word 'forfeited' in the subsequent paragraph of the writing would be just as inoperative as it would be under the first and more obvious interpretation. That is to say, if we should interpret the earlier covenant as meaning that the $700 was intended to be a deposit by way of security for the payment of the rent, so as to leave some interest in appellant capable of being forfeited, then the provision for forfeiture found in the subsequent clause of the lease would be either a penalty or a provision for liquidated damages. * * * "

The reasonableness of this interpretation is both convincing and satisfying. It is not necessary for any question to be determined as to the effect, in a proper case, to be given to a forfeiture clause such as that used by the parties here, nor whether the public policy represented by the Civil Code section of California, cited in the Wetzler and other decisions, might be followed to the full in the courts of Arizona, which has no comparable statute. As the use of the forfeiture clause does not imply that the money prepaid was a deposit, nor transmute a payment into a deposit, there was no money involved in this instance upon which the forfeiture could

operate or in which the lessee had a forfeitable interest.

The judgment is affirmed.

WINDES, PHELPS, STRUCKMEYER and LA PRADE, JJ., concur.

Note: UDALL, Chief Justice, having declared himself disqualified, the Honorable HENRY C. KELLY, Judge of Superior Court, Yuma County, was called to sit in his stead and participated in the determination of this appeal.